FILED
2018 Jan-12  PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

On-site visits by the medical doctor, OB/GYN, psychiatrist, and dentist at the Madison County Detention Facility for the month should be listed by inmate, provider, time spent on-site, and location of visit. The nursing schedule for the month should also be provided.

The number of inmates who were identified as having certain chronic conditions during the previous month should be listed as follows:

Diabetes

    a.    Number of insulin-dependent

    b.    Number of non-insulin dependent

Hypertension

Seizures

Diagnosed Mental Illness

Asthma

HIV/AIDS

**N.** **MEDICAL EQUIPMENT AND SUPPLIES:** ACH will be responsible for providing and paying for all equipment and supplies necessary for ACH's performance at the Detention Facility.

**O.** **PHARMACEUTICALS:** ACH must provide a pharmaceutical supply in accordance with federal, state and local laws that meets the needs of the inmate population. Medications shall be administered to inmates as prescribed. Appropriately trained medical personnel will administer medications and the administration of each dose will be documented. Medications must be maintained under proper conditions and in a secure area. ACH will ensure that appropriate quality and cost control measures are in place to reduce the unnecessary, wasteful, or redundant ordering of or distribution of formulary items.

ACH will comply with all applicable state, federal regulations, and ACA standards regarding prescribing, dispensing, administering, and procuring pharmaceuticals. Procedures will define timely procurement, dispensing, distribution, accounting, and disposal of pharmaceuticals. Records will be maintained to ensure adequate control of and accountability for all medications. Inmates will not prepare, dispense, or administer medication except for self-medication programs approved the Sheriff and ACH.

Drug storage and medication will not contain any outdated, discontinued, or recalled medications. All medications will be stored under proper conditions of sanitation, temperature, light, moisture, ventilation, segregation, and security. Antiseptics, other medications for external use, and disinfectants will be stored separately from internal and injectable medications. An adequate and proper supply of antidotes and other emergency medications, and related information will be readily available to health care staff. Prescription

ACH000313

medications are administered or delivered to the inmate only upon the order of a physician, dentist, or other legally authorized individual. ACH will determine the prescriptive practices for the facilities. Medications are prescribed only when clinically indicated and will be documented by a form approved by the Medical Director of ACH. ACH will work with pharmaceutical companies to assure the lowest possible pharmaceutical cost.

Medications are only dispensed by licensed individuals; Each prescription is labeled in accordance with applicable regulations with the following information: date, pharmacy prescription number, patient name, name of the drug, strength, amount dispensed, directions to the patient for use, prescriber name, other pertinent information. Health personnel who have been trained and/or licensed can only pass medications. Administration of medications or their refusal is recorded on the inmate's log. Inmates on abusable medications are observed to ensure that the medications are taken and not hoarded.

P.   **MEDICAL WASTE:**   ACH will be responsible for the removal of all medical waste associated with the provision of healthcare at the Detention Facility.

Q.   **CHRONIC CARE CLINICS:**   ACH must establish a plan for the identification, treatment and monitoring of inmates with chronic illnesses and special healthcare needs. ACH will be required to continue "chronic care clinics" for those persons identified with specified chronic illnesses and conditions (diabetes, hypertension, mental illness, HIV/AIDS, tuberculosis, asthma, seizures, etc.). ACH has defined a chronic health problem as an illness which is either ongoing or recurring. To provide an effective and efficient health care delivery system for chronic ill patients, ACH identifies the number of inmates with specific chronic conditions, and individual treatment plans are developed or reviewed for each of these inmates which includes: instructions regarding medications; special therapies; exercise; diet; the type and frequency of laboratory; other diagnostic testing; frequencies of follow up for reevaluation of the inmate's condition; and adjustment of the treatment plan as needed. Chronic clinics are established to enable inmates to have scheduled visits to the health care provider. Educating the inmate to understand the seriousness of their conditions can create a more workable outcome for both the health care provider and the patient. Counseling and self-care instructions are given to these inmates to assist them while detained and upon their return to the community which is documented in the inmate's medical record.

R.   **STAFFING PLANS:**   ACH will provide necessary and appropriate staffing in order to meet the terms of this contract and applicable consent orders. ACH agrees that minimum staffing levels as described below will be maintained at the Detention Facility at all times, regardless of staff vacation, training or illness. ACH represents and acknowledges that it may be required to increase staffing from these minimum stated levels in order to comply with this contract or applicable consent orders. However, ACH may request reasonable changes to the staffing plan. No changes to the staffing plan will be made without the written consent of the Sheriff. The Sheriff will not unreasonably withhold his consent so long as such changes, in the Sheriff's sole discretion, will maintain necessary and appropriate staffing to provide all required medical, psychiatric and dental care and satisfy any requirements contained in any applicable consent order.

DOCSHSV\164301\3\                                          14

ACH000314

<u>COURTHOUSE FACILITY WEEKLY STAFFING:</u>

(1)     RN      7:00 a.m. - 3:00 p.m. Monday through Friday

(1)     LPN     3:00 p.m. - 11:00 p.m. Monday through Friday

(1)     LPN     11:00 p.m. - 7:00 a.m. Monday through Friday

(1)     LPN     7:00 a.m. - 3:00 p.m. Saturday and Sunday

(1)     LPN     3:00 p.m. - 11:00 p.m. Saturday and Sunday

(1)     LPN     11:00 p.m. - 7:00 a.m. Saturday and Sunday

(1)     Medical Records clerk 20 hours per week

<u>MAIN FACILITY WEEKLY STAFFING:</u>

(1)     RN      Facility Administrator

(1)     RN      12 hours per day, seven days per week

(4)     LPNs    7:00 a.m. - 3:00 p.m. Monday through Friday

(2)     LPNs    3:00 p.m. - 11:00 p.m. Monday through Friday

(2)     LPNs    11:00 p.m. - 7:00 a.m. Monday through Friday

(2)     LPNs    7:00 a.m. - 7:00 p.m. Saturday and Sunday

(2)     LPNs    7:00 p.m. - 7:00 a.m. Saturday and Sunday

(1)     LPN     (booking) 24 hours per day/seven days per week

(1)     Licensed Clinical Social Worker ("LCSW") 40 hours per week, Monday through Friday, with emphasis on behavioral mental health

(2)     Medical Records clerks 40 hours per week each

<u>ON-SITE DOCTOR HOURS:</u>

Medical Director (medical doctor) five (5) days per week, no less than 20 hours per week. The Medical Director or another covering physician with specific knowledge of the operation of the Detention Facility is on call twenty-four hours a day, seven days a week, for emergency situations.

DOCSHSV\164301\3\                                    15

Psychiatrist one day per week, no less than four (4) hours per week.

Doctor specializing in obstetrics/gynecology two (2) times per month. Once a month, a certified registered nurse practitioner specializing in obstetrics/gynecology may visit the Detention Facility in lieu of the obstetrician/gynecologist.

Dentist one to two days per week totaling eight (8) hours per week.

ACH will provide services necessary to comply with all requirements contained herein.

S.     BASE COMPENSATION: The County (at the request of the Sheriff) will pay to ACH the annualized base price of Two Million, Four Hundred Forty-Seven Thousand, Two Hundred Sixty and 64/100 Dollars ($2,447,260.64) during the term of this Agreement, payable in monthly installments. Monthly installments during the initial term will be in the amount of Two Hundred Three Thousand, Nine Hundred Thirty-Eight and 39/100 Dollars ($203,938.39) each. In the event this Agreement should commence or terminate on a date other than the first or last day of any calendar month, compensation to ACH will be pro-rated accordingly for the shortened month. Upon any renewal year of this Agreement, the annualized amount of increase shall not exceed five percent (5%), unless agreed to by both parties in advance of the renewal date.

Account reconciliation shall be completed for each fiscal quarter of the Agreement. Adjustments shall be made for variances in the average daily inmate population, non-covered pharmaceuticals purchased and other expenses such as equipment or services purchased by ACH (with prior approval of the County and the Sheriff on behalf of the County). Any contract amount in arrears will be settled through reconciliation and adjusted accordingly. Adjustments will be made to the first monthly invoice prepared after reconciliation between ACH and the County. Payment of the adjusted amount will be due upon receipt of said invoice.

T.     INMATE POPULATION FLUCTUATION AND PER DIEM RATES: The County, the Sheriff, and ACH agree that the annual base price is calculated based upon an average daily inmate population of up to nine hundred (900). If the average daily inmate population exceeds nine hundred (900) inmates over a period of one (1) month (each month), then the compensation payable to ACH by the County shall be increased by a per diem rate of One and 50/100 Dollars ($1.50) for each inmate over nine hundred (900). The average daily inmate resident population shall be calculated pursuant to the daily count sheet generated at approximately midnight each day. The excess over an average of nine hundred (900), if any, will be multiplied by the per diem rate and by the number of days in the period to arrive at the increase in compensation payable to ACH for that period. In all cases where adjustments become necessary, the invoice adjustment will be made on the invoice for a subsequent month's services. For example, if there is an average population for any given period of nine hundred thirty (930) inmates, resulting in an excess of thirty (30) inmates, then ACH' shall receive additional compensation of thirty (30) times the per diem rate times the number of days in that period. The

ACH000316

resulting amount will be an addition to the regular base fee and will be billed on a subsequent monthly invoice.

U.     COST SHARING/COST POOL:   Out of the Six Hundred Eleven Thousand, Eight Hundred Fifteen and 16/100 Dollars ($611,815.16) quarterly cost for healthcare services, a total amount of One Hundred Fifty Thousand Dollars ($150,000) per quarter of this Agreement, is allocated to a "cost pool."  ACH shall, at its own cost, arrange for healthcare services for any inmate who, in the opinion of the Medical Director (hereinafter meaning a licensed physician), requires such care.  ACH's liability for costs associated with the healthcare services for inmates rendered outside the Jail and for prescription pharmaceuticals for inmates either inside or outside the Jail, will be limited each quarter of the term of this Agreement by this cost pool.  If the costs of all care as described in this paragraph exceed the amount within any said quarter of One Hundred Fifty Thousand Dollars ($150,000), then ACH will review all costs and claims for payment to determine that such costs and claims are proper, pay for the additional costs and claims and submit invoices supporting the payments to the Sheriff along with an ACH invoice for one hundred percent (100%) of the cost in excess of One Hundred Fifty Thousand Dollars ($150,000) for said quarter.  Subject to the provisions contained herein, ACH shall be responsible for all costs associated with inmate healthcare for all incurred but not received costs during the term of this Agreement.  ACH's responsibility to determine those costs and claims that are properly payable and for payment of such properly payable costs and claims shall survive any termination of this Agreement and shall extend for such period until all such costs and claims have been resolved.

V.     CONTRACT TERMINATION:   This contract may be cancelled "without cause" by any party upon ninety (90) days' written notice.  It is understood and agreed that this Agreement shall be subject to annual appropriations by Madison County for the operation of the Detention Facility.  Notwithstanding any provisions herein to the contrary, if funds are not appropriated for this Agreement, then upon exhaustion of such funding, Madison County and the Sheriff shall be entitled to immediately terminate this Agreement without penalty or liability.  Recognizing that such termination may entail costs for ACH, Madison County and the Sheriff will act in good faith and make every effort to give ACH notice of any potential funding or appropriation issues.  If this Agreement is terminated due to lack of funding, ACH shall be paid for services rendered up to the time of termination.  This contract may be terminated "for cause" upon ten (10) days' written notice.  In the event that this Agreement is terminated for cause, ACH shall be compensated for work completed by ACH up to the termination date set forth in the written termination notice.

7.     OBJECTIVES:   ACH will meet, exceed and otherwise comply with the following stated objectives:

A.     To deliver unimpeded, necessary healthcare services (including medical, dental and mental health services) to inmates (as set forth herein and as dictated by law) that can be audited against established standards.

B.     To operate the healthcare program in a humane manner with respect to the inmate's right to basic healthcare services.

DOCSHSV\164301\3\                                    17

ACH000317

C.    To operate the healthcare program at full staffing and use only licensed, certified and professionally trained personnel.

D.    To implement a written healthcare plan with clear objectives, policies, and procedures.

E.    To maintain an open and cooperative relationship with the Sheriff's administration and staff.

F.    To maintain complete and accurate records of care and to collect, analyze and report health statistics on a regular basis.

G.    To operate the healthcare program in a cost-effective manner with full reporting and accountability to the Sheriff and Madison County.

8.    MISCELLANEOUS:

A.    INDEPENDENT CONTRACTOR STATUS: The parties acknowledge that ACH is an independent contractor engaged to provide medical care to inmates at the Jail Facilities under the direction of ACH management. Nothing in this Agreement is intended nor shall be construed to create an agency relationship, an employer/employee relationship, or a joint venture relationship between the parties. The employees or agents of ACH are not now nor shall they be deemed to be employees of Madison County or the Sheriff. Likewise, the employees of the Sheriff and/or Madison County are not now nor shall they be deemed to be employees of ACH. ACH assumes all financial responsibility for the employees of ACH, such as wages, withholding taxes, social security taxes and other taxes which may be related to the services to be provided under this Agreement.

B.    ASSIGNMENT AND SUBCONTRACTING: ACH shall not assign this Agreement to any other person or entity without the express written consent of the Sheriff and the County. Any such assignment or subcontract shall include the obligations contained in this Agreement. Any assignment or subcontract shall not relieve ACH of its independent obligation to provide the services and be bound by the requirements of this Agreement. In order to discharge the obligations hereunder, ACH may engage certain healthcare professionals as independent contractors rather than employees. As the relationship between ACH and these healthcare professionals will be that of independent contractor, ACH will not be considered nor deemed to be engaged in the practice of medicine or other professions practiced by these professionals. ACH will exercise control over the manner or means by which these independent contractors perform their medical duties. This control will be exercised reasonably consistent with independent medical judgment these independent contractors are required to exercise. ACH shall exercise administrative supervision over such professionals necessary to insure strict fulfillment of the obligations contained in this Agreement. All terms and conditions of this Agreement shall be included in all such subcontracts. For each agent and subcontractor, including all medical professionals, physicians and nurses performing duties as agents or independent contractors of ACH under this Agreement, ACH shall provide the Sheriff proof that, for each such professional, there is in effect during the period that person is engaged in the

ACH000318

performance of this Agreement, a professional liability or medical malpractice insurance policy in an amount or amounts of One Million Dollars ($1,000,000) coverage per occurrence and Three Million Dollars ($3,000,000) annual aggregate coverage.

      **C.   NOTICE:**   Unless otherwise provided herein, all notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally in hand or sent by certified mail, return receipt requested, postage prepaid, and addressed to the appropriate party(s) at the following address or to any other person at any other address as may be designated in writing by the parties. All notices to the Madison County Sheriff and to Madison County shall be addressed to:

          County:     Madison County Commission
                      100 North Side Square
                      Huntsville, Alabama 35801-4820

          Sheriff:    Sheriff Blake Dorning
                      Madison County Sheriff's Department
                      100 North Side Square
                      Huntsville, Alabama 35801-4820

      All notices to ACH shall be addressed to:

                      Norman R. Johnson, M.D.
                      Advanced Correctional Healthcare, Inc.
                      P. O. Box 10260
                      Peoria, Illinois 61612-0260

      Notices shall be effective upon receipt.

      **D.   GOVERNING LAW:**  This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed according to, the laws of the State of Alabama, except as specifically noted.

      **E.   ENTIRE AGREEMENT:**  This Agreement constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof. No modifications or amendment to this Agreement shall be binding upon the parties unless the same is in writing and signed by the respective parties hereto. All prior negotiations, agreements and understandings with respect to the subject matter of this Agreement are superseded hereby.

      **F.   AMENDMENT:**  This Agreement may be amended or revised only in writing and signed by all parties.

ACH000319

G.   **WAIVER OF BREACH:**  The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

H.   **OTHER CONTRACTS AND THIRD-PARTY BENEFICIARIES:** The parties acknowledge that ACH is neither bound by nor aware of any other existing contracts to which the County or the Sheriff are parties and which relate to the providing of medical care to inmates at the Jail.  The parties agree that they have not entered into this Agreement for the benefit of any third person or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof, specifically including but not limited to arrestees or inmates in the custody of the Sheriff.

I.   **SEVERABILITY:**  In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of the Agreement which shall remain in full force and effect and enforceable in accordance with its terms.

J.   **LIAISON:**  The Madison County Sheriff shall serve as the liaison with ACH.

K.   **COOPERATION:**  On and after the date of this agreement, each party shall, at the request of the other, make, execute and deliver or obtain and deliver all instruments and documents and shall do or cause to be done all such other things which either party may reasonably require to effectuate the provisions and intentions of this agreement.

L.   **TIME OF ESSENCE:**  Time is and shall be of the essence of this agreement.

M.   **AUTHORITY:**  The parties signing this agreement hereby state that they have the authority to bind the entity on whose behalf they are signing.  The Sheriff's signature hereto is not intended to bind him in his individual capacity, and his signature hereto is merely intended to convey his consent to and desire for the County to enter into this Agreement with ACH to provide the services herein.

N.   **BINDING EFFECT:**  This agreement shall be binding upon the parties hereto, their heirs, administrators, executors, successors and assigns.

O.   **CUMULATIVE POWERS:**  Except as expressly limited by the terms of this agreement, all rights, power and privileges conferred hereunder shall be cumulative and not restrictive of those provided at law or in equity.

ACH000320

IN WITNESS WHEREOF, the parties have executed this Agreement in their official capacities with legal authority to do so.

SHERIFF, MADISON COUNTY

_____

Blake L. Dorning

Date: 07/06/06

MADISON COUNTY COMMISSION

_____

Mike Gillespie, Chairman

Date: July 6, 2006

ATTEST:

_____

Howard Baites

County Administrator

Date: July 6, 2006

ADVANCED CORRECTIONAL HEALTHCARE, INC.

By _____

Its: _____

Date: 06 July 06

DOCSHSV\164301\3\                                    21

ACH000321

## HEALTH SERVICES AGREEMENT

**THIS AGREEMENT** between Madison County, Alabama (hereinafter referred to as "County"), Blake Dorning in his official capacity as Madison County Sheriff (hereinafter referred to as "Sheriff"), and Southern Health Partners, Inc., a Delaware corporation, (hereinafter referred to as "SHP"), is entered into as of the 20th day of SEPTEMBER , 2004. Services under this Agreement shall commence on October 1, 2004 and shall continue through September 30, 2005, unless otherwise terminated as provided herein.

### WITNESSETH:

WHEREAS, the Sheriff desires to provide for health care to inmates housed in the Madison County Detention Facility (hereinafter referred to as "Detention Facility" or "Jail") in accordance with applicable law; and,

WHEREAS, SHP is in the business of providing correctional health care services and desires to provide such services for the Sheriff under the terms and conditions hereof; and,

WHEREAS, the Sheriff desires to enter into this Agreement with SHP to promote this objective; and,

WHEREAS, the County, upon the recommendation of the Sheriff, consents to and desires to enter into this Agreement with SHP to the extent necessary for SHP to secure payment for the services provided hereunder.

NOW THEREFORE, in consideration of the covenants and promises hereinafter made, the parties hereto agree as follows:

### ARTICLE I: HEALTH CARE SERVICES.

1.1 General Engagement. The Sheriff (and the County to the extent necessary for SHP to secure payment of services provided hereunder) hereby contracts with SHP to provide for the delivery of all medical services to inmates housed in the Detention Facility. Such services shall at all times be in compliance with the requirements of Orders entered in the United States District Court dated November 8, 2000, March 26, 2001, and November 26, 2001, in the case of Marshall v. Whisante. Furthermore, such services shall at all times be in compliance with the requirements set forth within Addendum "A" attached hereto. This care is to be delivered to individuals under the custody and control of the Sheriff at the Jail, and SHP enters into this Agreement according to the terms and provisions hereof.

SQLHSV01\150749\1\



DEFENDANT'S
EXHIBIT
19
Rich

MADISON COUNTY (ACH) 0169

1.2     Scope of General Services.  The responsibility of SHP for medical care of an inmate commences with the booking and physical placement of said inmate into the Jail.  SHP shall provide health care services for all persons in the custody of the Sheriff, except those identified in paragraph 1.7.   SHP shall provide on a regular basis, at its own cost all professional medical, psychological, dental, and related health care and administrative services for the inmates, regularly scheduled sick call, nursing care, regular physician care, hospitalization, medical specialty services, emergency medical care, emergency ambulance services when medically necessary, medical records management, pharmacy services management, administrative support services, and other services, all as more specifically described herein.

1.3     Specialty Services.  In addition to providing the general services described above, SHP shall, at its own cost, provide to inmates at the Jail special medical services including, but not limited to, radiology services and laboratory services to the extent such are determined to be medically necessary by SHP.  Where non-emergency specialty care is required and cannot be rendered at the Jail, SHP shall make arrangements with the Sheriff for the transportation of the inmates in accordance with Section 1.9 of this Agreement.

1.4     Emergency Services.  SHP shall provide, at its own cost, emergency medical, mental health, and dental care, as medically necessary, to inmates through arrangements to be made by SHP.

1.5     Limitations On Costs - Cost Pool.  SHP shall, at its own cost, arrange for medical, mental health, and dental services for any inmate who, in the opinion of the Medical Director (hereinafter meaning a licensed SHP physician), requires such care. SHP's liability for costs associated with the medical, mental health, and dental services for inmates rendered outside the Jail, for x-rays, and for prescription pharmaceuticals for inmates, will be limited each 12-month contract period by a cost pool.  For the first year of this Agreement (from October 1, 2004 through September 30, 2005, hereinafter referred to as the "first year"), such pool will be established in the amount of $350,000 in the aggregate, for all inmates.  If the costs of all care as described in this paragraph 1.5 exceed the amount of $350,000 in the first year, then SHP will review all costs and claims for payment to determine that such costs and claims are proper, pay for the additional costs and claims, and submit invoices supporting the payments to the Sheriff along with an SHP invoice for 50% of the cost in excess of $350,000.  If the costs of all care as described in this paragraph 1.5 should exceed the amount of $430,000 in this first year, then SHP will review all costs and claims for payment to determine that such costs and claims are proper, pay for the additional costs and claims, and submit invoices supporting the payments to the Sheriff along with an SHP invoice for 100% of the cost in excess of $430,000.

MADISON COUNTY (ACH) 0170

For the second year of this Agreement (beginning on October 1, 2005 through September 30, 2006, hereinafter referred to as the "second year"), the cost pool will be increased to the amount of $450,000 in the aggregate, for all inmates. If the costs of all care as described in this paragraph 1.5 exceed the amount of $450,000 in this second year, then SHP will review all costs and claims for payment to determine that such costs and claims are proper, pay for the additional costs and claims, and submit invoices supporting the payments to the Sheriff along with an SHP invoice for 50% of the cost in excess of $450,000. If the costs of all care as described in this paragraph 1.5 should exceed the amount of $550,000 in this second year, then SHP will review all costs and claims for payment to determine that such costs and claims are proper, pay for the additional costs and claims, and submit invoices supporting the payments to the Sheriff along with an SHP invoice for 100% of the cost in excess of $550,000.

In all cases where SHP submits invoices to the Sheriff for reimbursement or for payments advanced to SHP for payment by SHP to various providers, such invoices will be payable by the Sheriff within 30 days of the SHP invoice date. For purposes of this paragraph 1.5, the pool amount for each year will be prorated for any contract period of less than 12 months.

The intent of this Section 1.5 is to define SHP's limit of costs for pharmaceuticals, x-ray procedures, hospitalization, and all other medical, mental health and dental services rendered outside of the Jail.

1.6    Injuries Incurred Prior to Incarceration; Pregnancy.    SHP will not be financially responsible for the cost of any medical treatment or health care services provided to any arrestee prior to the arrestee's formal admittance (or booking) into the Jail. After an arrestee has been formally admitted (or booked) into the Jail, the arrestee ceases to be an arrestee for purposes of this Agreement, and is considered an "inmate" at the Jail.

Furthermore, SHP will not be financially responsible for the cost of services rendered outside the jail for any medical treatment or health care services provided to medically stabilize any arrestee not accepted at booking because of a life-threatening injury or illness or because the arrestee is in immediate need of emergency medical care.

After an arrestee has been medically stabilized and returns to the Jail and is thereafter admitted to the Jail, SHP will be financially responsible for the cost of all medical treatment for health care services regardless of the nature of the illness or injury or whether or not the illness or injury occurred prior or subsequent to the individual's incarceration at the Jail. An inmate shall be considered medically stabilized when the medical condition no longer requires immediate emergency medical care or outside hospitalization so that the inmate can be reasonably housed inside the Jail.

SHP shall not be responsible for medical costs associated with the medical care

MADISON COUNTY (ACH) 0171

of any infants born to inmates.  SHP shall provide health care services to inmates up to, through, and after the birth process, but SHP shall not be financially responsible for health care services provided to an infant following birth, other than those services that may be rendered to the infant prior to transport to a hospital.  SHP shall not be responsible for the costs or furnishing of any abortions.

1.7    Inmates Outside the Facilities.  Health care services are intended only for those inmates in the actual physical custody of the Sheriff.  This includes inmates under guard in outside hospitals.  Such inmates will be included in the daily population count.  No other person(s), including any in outside hospitals who are not under guard, shall be the responsibility of SHP, nor shall such person(s) be included in the daily population count.

Inmates on any sort of temporary release (except for work release inmates) including, but not limited to inmates temporarily released for the purpose of attending funerals or other family emergencies, inmates on escape status, inmates on pass or parole, or who are not housed in the Jail, will not be included in the daily population count, and will not be the responsibility of SHP with respect to the payment or furnishing of health care services.

The cost of medical services provided to inmates who become ill or are injured while on temporary release (except for work release inmates) will not be the financial responsibility of SHP after their return to the Jail.  This limitation does not apply to inmates who are sent for mental evaluation or who are temporarily transferred to another facility to testify.  This relates solely to the costs relating to the particular illness or injury incurred while on such temporary release.  The cost of medical services for other illnesses and injuries will be the responsibility of SHP.

Inmates participating in a "work release" program who are released from the Sheriff's custody for short periods of time in order for the inmate to work at a job outside the confines of the Jail are included in the daily population count.  For specific treatment regarding SHP's responsibility for the healthcare of "work release" inmates, refer to Section 7.5 of this Agreement.

Persons in the physical custody of other police or other penal jurisdictions at the request of the Sheriff are likewise excluded from the population count, and SHP is not responsible for furnishing or paying for health care services to these inmates while they are not in the custody of the Sheriff.

1.8    Elective Medical Care.  SHP will not be responsible for providing elective medical care to inmates.  For purposes of the Agreement, "elective medical care"

MADISON COUNTY (ACH) 0172

means medical care which, if not provided, would not, in the opinion of SHP's Medical Director, cause the inmate's health to deteriorate, cause definite harm to the inmate's well-being, or cause unnecessary pain. Any referral of inmates for elective medical care must be reviewed by the Sheriff prior to provision of such services.

    1.9    <u>Transportation Services.</u>  To the extent any inmate requires off-site non-emergency health care treatment including, but not limited to, hospitalization care and specialty services, for which care and services SHP is obligated to pay under this Agreement, the Sheriff will, upon prior request by SHP, its agents, employees or contractors, provide transportation as reasonably available provided that such transportation is scheduled in advance. When medically necessary, SHP shall arrange all emergency ambulance transportation of inmates in accordance with Section 1.4 of this Agreement.

## ARTICLE II: PERSONNEL.

    2.1    <u>Staffing.</u>  SHP shall provide medical, mental health, dental and support personnel necessary for the rendering of health care services to inmates at the Jail as described in and required by this Agreement.

    2.2    <u>Licensure, Certification and Registration of Personnel.</u>  All personnel provided or made available by SHP to render services hereunder shall be licensed, certified or registered, as appropriate, in their respective areas of expertise as required by applicable Alabama law, and appropriate supervision shall be provided as required by applicable Alabama law.

    2.3    <u>Sheriff's Satisfaction with Health Care Personnel.</u>  If the Sheriff becomes dissatisfied with any health care personnel provided by SHP hereunder, or by any independent contractor, subcontractors or assignee, SHP, in recognition of the sensitive nature of correctional services, shall, following receipt of written notice from the Sheriff of the grounds for such dissatisfaction and in consideration of the reasons therefor, exercise its best efforts to resolve the problem.  If the problem is not resolved satisfactorily to the Sheriff, SHP shall remove or shall cause any independent contractor, subcontractor, or assignee to remove the individual about whom the Sheriff has expressed dissatisfaction.  Should removal of an individual become necessary, SHP will be allowed reasonable time, prior to removal, to find an acceptable replacement, without penalty or any prejudice to the interests of SHP.

    2.4    <u>Use of Inmates in the Provision of Health Care Services.</u>  Inmates shall not be employed or otherwise engaged by either SHP or the Sheriff in the direct rendering of any health care services.

MADISON COUNTY (ACH) 0173

2.5   <u>Subcontracting and Delegation.</u>   In order to discharge its obligations hereunder, SHP will engage certain health care professionals as independent contractors rather than as employees.   As the relationship between SHP and these health care professionals will be that of independent contractor, SHP will not be considered or deemed to be engaged in the practice of medicine or other professions practiced by these professionals.   SHP will not exercise control over the manner or means by which these independent contractors perform their professional medical duties.      However, SHP shall exercise administrative supervision over such professionals necessary to insure the strict fulfillment of the obligations contained in this Agreement.   For each agent and subcontractor, including all medical professionals, physicians, dentists and nurses performing duties as agents or independent contractors of SHP under this Agreement, SHP shall provide the Sheriff and the County proof, if requested, that there is in effect a professional liability or medical malpractice insurance policy, as the case may be, in an amount of at least five-hundred thousand dollars ($500,000) coverage per occurrence and one million dollars ($1,000,000) aggregate.

2.6   <u>Discrimination.</u>   During the performance of this Agreement, SHP, its employees, agents, subcontractors, and assignees agree as follows:

     a. None will discriminate against any employee or applicant for employment because of race, religion, color, sex or national origin, except where religion, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of the contractor.
     b. In all solicitations or advertisements for employees, each will state that it is an equal opportunity employer.
     c. Notices, advertisements and solicitations placed in accordance with federal law, rule or regulation shall be deemed sufficient for the purpose of meeting the requirements of this section.

## ARTICLE III: REPORTS AND RECORDS

3.1   <u>Medical Records.</u>   SHP shall cause and require to be maintained complete and accurate medical records for each inmate who has received health care services.   Each medical record will be maintained in accordance with applicable laws, the above-referenced Orders entered in <u>Marshall v. Whisante</u>, applicable NCCHC standards, and the Sheriff's policies and procedures. The medical records shall be kept separate from the inmate's confinement record.   A complete legible copy of the applicable medical record shall be available, at all times, to the County and to the Sheriff.   Medical records shall be kept confidential.   Subject to applicable law regarding

MADISON COUNTY (ACH) 0174

confidentiality of such records, SHP shall comply with Alabama law and the Sheriff's policy with regard to access by inmates and Jail staff to medical records.   No information contained in the medical records shall be released by SHP except as provided by the Sheriff's policy, by a court order, or otherwise in accordance with the applicable law.   SHP shall, at its own cost, provide all medical records, forms, jackets, and other materials necessary to maintain the medical records.   At the termination of this Agreement, all medical records shall be delivered to and remain with the Sheriff. However, the Sheriff shall provide SHP with reasonable ongoing access to all medical records even after the termination of this Agreement for the purposes of defending litigation.

3.2   <u>Regular Reports by SHP to the Sheriff.</u>   SHP shall provide to the Sheriff, on a date and in a form mutually acceptable to SHP and the Sheriff, reports relating to services rendered under this Agreement.

3.3   <u>Inmate Information.</u>   Subject to applicable Alabama law, in order to assist SHP in providing the best possible health care services to inmates, the Sheriff will provide SHP with information pertaining to inmates that SHP and the Sheriff mutually identify as reasonable and necessary for SHP to adequately perform its obligations hereunder.

3.4   <u>SHP Records Available to Sheriff and County with Limitations on Disclosure.</u>   SHP shall make available to the Sheriff and the County, at the Sheriff's or County's request, all records, documents and other papers relating to the direct delivery of health care services to inmates hereunder.   The Sheriff and the County understand that written operating policies and procedures employed by SHP in the performance of its obligations hereunder are proprietary in nature and will remain the property of SHP. Information concerning such may not, at any time, be used, distributed, copied or otherwise utilized by the Sheriff or the County, except in connection with the delivery of health care services hereunder, or as permitted or required by law, unless such disclosure is approved in advance writing by SHP.   However, SHP recognizes that such documents may be distributed among the parties in the <u>Marshall v. Whisante</u> class action or in other litigation relating to the provision of healthcare services to inmates at the Jail, and that such documents may be filed in the United States District Court for the Northern District of Alabama or in state courts throughout Alabama.

3.5   <u>Sheriff's Records Available to SHP with Limitations on Disclosure.</u>   During the term of this Agreement and for a reasonable time thereafter, the Sheriff will provide SHP, at SHP's request, the Sheriff's records relating to the provision of health care services to inmates as may be reasonably requested by SHP or as are pertinent to the investigation or defense of any claim related to SHP's conduct.   Consistent with

MADISON COUNTY (ACH) 0175

applicable law, the Sheriff will make available to SHP such inmate medical records as are maintained by the Sheriff, hospitals and other outside health care providers involved in the care or treatment of inmates (to the extent the Sheriff has any control over those records) as SHP may reasonably request. Any such information provided by the Sheriff to SHP that the Sheriff considers confidential shall be kept confidential by SHP and shall not, except as may be required by law, be distributed to any third party without the prior written approval of the Sheriff.

## ARTICLE IV:  SECURITY

4.1    <u>General.</u>  SHP and the Sheriff understand that adequate security services are necessary for the safety of the agents, employees and subcontractors of SHP as well as for the security of inmates and the Sheriff's staff, consistent with the correctional setting.  The Sheriff will take reasonable steps to provide sufficient security to enable SHP to safely and adequately provide the health care services described in this Agreement.  By making this acknowledgment, the Sheriff does not herein create any duty other than that which is already expressly given to him as a constitutional officer of the State of Alabama.

4.2    <u>Loss of Equipment and Supplies.</u>  Neither the Sheriff nor the County shall be liable for loss of or damage to equipment and supplies of SHP, its agents, employees or subcontractors unless such loss or damage was caused by the negligence of the Sheriff, the County or their respective employees.

4.3    <u>Security During Transportation Off-Site.</u>  The Sheriff will provide security as necessary and appropriate in connection with the transportation of any inmate between the Jail and any other location for off-site services as contemplated herein.

## ARTICLE V:  OFFICE SPACE, EQUIPMENT, INVENTORY AND SUPPLIES

5.1    <u>General.</u>  The Sheriff and the County agree to provide SHP with office space, facilities, equipment, and utilities and the Sheriff will provide necessary maintenance and housekeeping of the office space and facilities.

5.2    <u>Delivery of Possession.</u>  The Sheriff and the County will provide to SHP, beginning on the date of commencement of this Agreement, possession and control of all Sheriff or County-owned medical and office equipment and supplies in place at the Jail's health care unit.  At the termination of this or any subsequent Agreement, SHP will return to the Sheriff or County's possession and control all supplies, medical and office equipment, in working order, reasonable wear and tear excepted, which were in place at the Jail's health care unit prior to the commencement of services under this

SQLHSV01\150749\1\                                8

MADISON COUNTY (ACH) 0176

Agreement.

5.3   Maintenance and Replenishment of Equipment.   Except for the equipment and instruments owned by the Sheriff or the County at the inception of this agreement, any equipment or instruments required by SHP during the term of this Agreement shall be purchased by SHP at its own cost. At the end of this Agreement, or upon termination, the Sheriff and County shall be entitled to purchase SHP's equipment and instruments upon a mutually agreed depreciation schedule.

5.4   Dental Equipment.   SHP has purchased dental equipment necessary for the operation of the dental unit located at the main facility. This dental unit came into service on October 1, 2003 and had an original cost of $23,758.00. Since October 1, 2003, SHP has been reimbursed on a monthly basis in the amont of $659.94 for the use of this equipment. The monthly reimbursement to SHP for the cost of the dental unit has been included in the Base Compensation price set forth in section 7.1 of this Agreement. The equipment may be purchased by the Sheriff or the County at its depreciated value, determined by a straight-line depreciation method using a useful life of 36 months. The original supporting documents will be made available to the Sheriff or the County for this purpose. Barring an early buyout as allowed here, at the end of the 36th month the title to the equipment will pass to the County at no further cost to the County, and any further repairs to, and replacement of the equipment will be at the expense of the County.

SHP will provide all necessary dental supplies and will replace any instruments and other equipment as needed, and SHP will provide preventive maintenance for equipment, and make any repairs to equipment damaged during the course of the 36-month repayment period.

## ARTICLE VI:  TERM AND TERMINATION OF AGREEMENT

6.1   Term.   This Agreement shall commence on October 1, 2004. The initial term of this Agreement shall end on September 30, 2005, and may be extended for additional one-year terms, if mutually agreeable to both parties.

6.2   Termination.   This Agreement may be terminated as otherwise provided in this Agreement or as follows:

      (a)   Termination by Agreement. In the event that each of the parties mutually agrees in writing, this Agreement may be terminated on the terms and date stipulated therein.

      (b)   Termination by Cancellation. This Agreement may be canceled without cause by either party upon sixty (60) days prior written notice in accordance with Section 9.3 of this Agreement.

MADISON COUNTY (ACH) 0177

(c)     Annual Appropriations and Funding.  This Agreement is subject to the annual appropriation of funds by the Madison County Commission.  Notwithstanding any provision herein to the contrary, if funds are not appropriated for this Agreement, then the County and Sheriff shall be entitled to immediately terminate this Agreement, without penalty or liability, except the payment of all contract fees up to and through the last day of service.

6.3     Responsibility for Inmate Health Care.   Upon termination of this Agreement, all responsibility for providing health care services to all inmates, including inmates receiving health care services at sites outside the Jail, will be transferred from SHP to the Sheriff.

## ARTICLE VII.  COMPENSATION.

7.1     Base Compensation.  The County (at the request of the Sheriff) will pay to SHP the annualized base price of $1,702,048.26 during the initial term of this Agreement, payable in monthly installments.  Monthly installments during the initial term will be in the amount of $141,837.35 each.  SHP will bill the County approximately 30 days prior to the month in which services are to be rendered.  The County agrees to pay SHP prior to the tenth day of the month in which services are rendered.  In the event this Agreement should commence or terminate on a date other than the first or last day of any calendar month, compensation to SHP will be pro-rated accordingly for the shortened month.

7.2     Increases and Decreases in Inmate Population.  The County, the Sheriff, and SHP agree that the annual base price is calculated based upon an average daily inmate population of up to 725.  If the average daily inmate population exceeds 725 inmates over a period of one month, then the compensation payable to SHP by the County shall be increased by a per diem rate of $1.68 for each inmate over 725.  The average daily inmate resident population shall be calculated by adding the population or head count totals taken at a consistent time each day and dividing by the number of counts taken.  The excess over an average of 725, if any, will be multiplied by the per diem rate and by the number of days in the month to arrive at the increase in compensation payable to SHP for that month.  In all cases where adjustments become necessary, the invoice adjustment will be made on the invoice for a subsequent month's services.  For example, if there is an average population for any given month of 730 inmates, resulting in an excess of five (5) inmates, then SHP shall receive additional compensation of five (5) times the per diem rate times the number of days in that month. The resulting amount will be an addition to the regular base fee and will be billed on a subsequent monthly invoice.

MADISON COUNTY (ACH) 0178

This per diem is intended to cover additional cost in those instances where short-term changes in the inmate population result in the higher utilization of routine supplies and services.  However, the per diem is not intended to provide for any additional fixed costs, such as new staffing positions which might prove necessary if the inmate population grows significantly and if the population increase is sustained.  In such cases, SHP reserves the right to negotiate for an increase to its staffing complement and its contract price in order to continue to provide services to the increased number of inmates and maintain the quality of care.  These negotiations would be conducted with the full knowledge of the Chief Correctional Officer, Sheriff and Chairman of the Madison County Commission, and following appropriate notification to the County.

7.3   <u>Future Years' Compensation and County Option.</u>  The compensation (i.e., annual base price and per diem rate as defined in Sections 7.1 and 7.2, respectively) to SHP shall be increased on October 1, 2005.  For the year beginning on October 1, 2005 and ending September 30, 2006, the County will pay to SHP the annualized base price of $1,870,130.04, payable in monthly installments of $155,844.17 each.  The compensation to SHP for years beginning on or after October 1, 2006 shall be negotiated in advance of such dates.

7.4   <u>Inmates From Other Jurisdictions.</u>  Medical care rendered within the Jail to inmates from other jurisdictions housed in the Jail pursuant to contracts between the Sheriff and such other jurisdictions or the State of Alabama will be the responsibility of SHP, as limited by section 1.7.  Medical care that cannot be rendered in the Jail will be arranged by SHP but SHP shall have no financial responsibility for such services to those inmates.

7.5   <u>Responsibility For Work Release Inmates.</u>  Notwithstanding any other provisions of this Agreement to the contrary, both parties agree that inmates assigned to Work Release are personally responsible for the costs of any medical services performed by providers other than SHP, when the illness or injury results directly from the work being performed, or when such illness or injury is treated while on Work Release.  In all cases, SHP will assist with the necessary transportation for Work Release inmates to obtain medical care.  Injuries to inmates assigned to work crews and while performing labor outside of the Jail are likewise excluded from SHP's responsibility.

## ARTICLE VIII:  LIABILITY AND RISK MANAGEMENT.

8.1   <u>Insurance.</u>  At all times during this Agreement, SHP shall maintain professional liability insurance covering SHP, its employees and its officers in the

MADISON COUNTY (ACH) 0179

minimum amount of at least one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) in the aggregate. In the event that the coverage changes, SHP shall notify the County and the Sheriff in writing. SHP shall also notify the County and the Sheriff, in writing, of any reduction in policy amounts or cancellation of insurance coverage. SHP shall provide a certificate of insurance evidencing the above policy levels and shall name the County and the Sheriff as an additional insured.

     8.2    <u>Lawsuits Against the County or the Sheriff.</u>  In the event that any lawsuit (whether frivolous or otherwise) is filed against the County (including its elected officials, employees and agents) or the Sheriff (including his employees, agents, and representatives) based on or containing any allegations concerning medical care of inmates or the performance of SHP's employees, agents, subcontractors or assignees, the parties agree that SHP, its employees, agents, subcontractors, assignees or independent contractors, as the case may be, may be joined as parties defendant in any such lawsuit and shall be responsible for their own defense and any judgments rendered against them.

     Nothing herein shall prohibit any of the parties to this Agreement from joining the remaining parties hereto as defendants in lawsuits filed by third parties.

     8.3    <u>Hold Harmless.</u>  SHP agrees to indemnify, defend, and hold harmless the County and the Sheriff, their agents, servants and employees from any and all claims, actions, lawsuits, damages, judgments or liabilities of any kind whatsoever (including payment of reasonable attorneys' fees for the defense of same and for reasonable attorneys' fees that may be awarded to the plaintiff in a lawsuit) arising out of the operation and maintenance of the aforesaid program of health care services conducted by SHP, it being the express understanding of the parties hereto that SHP shall provide the actual health care services as defined herein. The County and the Sheriff shall immediately notify SHP of any incident, claim or lawsuit of which the County and the Sheriff become aware. SHP shall likewise immediately notify SHP of any incident, claim or lawsuit of which SHP becomes aware. The parties shall cooperate in the defense of such claims to the extent that such cooperation does not waive any potential defenses available to the parties under applicable law. SHP shall retain sole control of the defense of those claims against it relating solely to the operation and maintenance of the aforesaid program of healthcare. The County and the Sheriff (and any of their officers, officials, agents, servants, and employees) shall retain sole control of the defense of those claims or lawsuits against them.

## ARTICLE IX: MISCELLANEOUS.

     9.1    <u>Independent Contractor Status.</u>  The parties acknowledge that SHP is an

MADISON COUNTY (ACH) 0180

independent contractor engaged to provide medical care to inmates at the Jail Facilities under the direction of SHP management. Nothing in this Agreement is intended nor shall be construed to create an agency relationship, an employer/employee relationship, or a joint venture relationship between the parties.

9.2   Assignment and Subcontracting.  SHP shall not assign this Agreement to any other person or entity without the express written consent of the Sheriff and the County which consent shall not be unreasonably withheld.  Any such assignment or subcontract shall include the obligations contained in this Agreement.  Any assignment or subcontract shall not relieve SHP of its independent obligation to provide the services and be bound by the requirements of this Agreement.

9.3   Notice.   Unless otherwise provided herein, all notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally in hand or sent by certified mail, return receipt requested, postage prepaid, and addressed to the appropriate party(s) at the following address or to any other person at any other address as may be designated in writing by the parties:

| (a) | County: | Madison County Commission |
|-----|---------|---------------------------|
|     |         | 100 North Side Square |
|     |         | Huntsville, AL 35801-4820 |

| (b) | Sheriff: | Madison County Sheriff Blake Dorning |
|-----|----------|--------------------------------------|
|     |          | 100 North Side Square |
|     |          | Huntsville, AL 35801-4820 |

| (c) | SHP: | Jeffrey A. Reasons, President |
|-----|------|-------------------------------|
|     |      | Southern Health Partners, Inc. |
|     |      | 3712 Ringgold Road, #364 |
|     |      | Chattanooga, TN 37412 |
|     |      | email: shphealth@aol.com |

Notices shall be effective upon receipt.

9.4   Governing Law.  This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed according to, the laws of the State of Alabama, except as specifically noted.

9.5   Entire Agreement.  This Agreement constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises,

SQLHSV01\150749\1\                          13

MADISON COUNTY (ACH) 0181

representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof. No modifications or amendment to this Agreement shall be binding upon the parties unless the same is in writing and signed by the respective parties hereto. All prior negotiations, agreements and understandings with respect to the subject matter of this Agreement are superseded hereby.

9.6     Amendment. This Agreement may be amended or revised only in writing and signed by all parties.

9.7     Waiver of Breach. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

9.8     Other Contracts and Third-Party Beneficiaries. The parties acknowledge that SHP is neither bound by nor aware of any other existing contracts to which the County or the Sheriff are parties and which relate to the providing of medical care to inmates at the Jail. The parties agree that they have not entered into this Agreement for the benefit of any third person or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof, specifically including but not limited to arrestees or inmates in the custody of the Sheriff.

9.9     Severability. In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of the Agreement which shall remain in full force and effect and enforceable in accordance with its terms.

9.10    Liaison. The Madison County Sheriff shall serve as the liaison with SHP.

9.11    Cooperation. On and after the date of this agreement, each party shall, at the request of the other, make, execute and deliver or obtain and deliver all instruments and documents and shall do or cause to be done all such other things which either party may reasonably require to effectuate the provisions and intentions of this agreement.

9.12    Time of Essence. Time is and shall be of the essence of this agreement.

9.13    Authority. The parties signing this agreement hereby state that they have the authority to bind the entity on whose behalf they are signing. The Sheriff's signature hereto is not intended to bind him in his individual capacity, and his signature hereto is merely intended to convey his consent to and desire for the County to enter

SQLHSV01\150749\1\                                14

MADISON COUNTY (ACH) 0182

into this Agreement with SHP to provide the services herein.

9.14   Binding Effect.   This agreement shall be binding upon the parties hereto, their heirs, administrators, executors, successors and assigns.

9.15 Cumulative Powers.   Except as expressly limited by the terms of this agreement, all rights, power and privileges conferred hereunder shall be cumulative and not restrictive of those provided at law or in equity.

IN WITNESS WHEREOF, the parties have executed this Agreement in their official capacities with legal authority to do so.

SHERIFF, MADISON COUNTY

Blake L. Dorning                         Date

MADISON COUNTY COMMISSION

By: _____   9-20-04
Mike Gillespie, Chairman         Date

ATTEST:

_____   9-20-04
Howard Baites                    Date
County Administrator

SOUTHERN HEALTH PARTNERS, INC.

_____   4/29/04
Jeffrey A. Reasons               Date
President

MADISON COUNTY (ACH) 0183

ADDENDUM "A"

**Medical Standard of Care.**

Inmates in the detention facility shall have access at all time to constitutionally adequate medical care. To this end, SHP must provide 24-hour/7 days per week nursing coverage at the Courthouse Facility and the Main Facility, provided that the Main Facility has a sufficient number of nurses to address in a timely manner the health care needs of any inmates held at the annex buildings. In addition, all 14-day physical exams must be performed by nurses or higher level practitioners appropriately trained in physical assessment. Licensed practical nurses must be supervised by a registered nurse, nurse practitioner, physician's assistant, or physician as required by the Alabama Board of Nursing. The Medical Director shall review and approve each physical assessment performed on any inmate.

By October 1, 2003, and thereafter on an annual basis, the medical director, in conjunction with the treating psychiatrist (with regard to psychiatric illness) and obstetrician/gynecologist (with regard to obstetrical and gynecological issues), shall review and update triage protocols and nursing protocols to ensure that they are in accordance with the community standard of care specific to each medical condition, and train all nurses on the proper use of these protocols. The triage protocols developed by the medical director shall indicate whether a condition requires routine (within four weeks), urgent (within two days), or emergency (immediate) referral to a physician. There shall be sufficient physician hours each week to ensure that inmates are seen by a physician at the appropriate interval as determined by the triage protocol.

The medical director shall review the referral decisions by nurses to physicians on a weekly basis to ensure that individuals whose serious medical, dental, and mental health conditions require treatment are being referred in an appropriate and timely way consistent with the standard of care. This shall include referral of individuals newly admitted to the detention facility who suffer from acute or chronic illnesses. If the medical director determines that referrals are not appropriate and timely, he or she shall take immediate steps to counsel and train the nurses in proper referral practices.

An obstetrician/gynecologist shall be available at the detention facility at least twice each month to provide adequate prenatal care to pregnant women and to treat women with gynecological problems. No more than once a month, a certified registered nurse practitioner specializing in obstetrics/gynecology may visit the detention facility in place of the obstetrician/gynecologist. If, according to the triage protocols developed by the medical director and obstetrician/gynecologist, a female prisoner requires treatment prior to the next visit by the obstetrician/gynecologist, she shall receive such treatment at the appropriate interval.

SHP shall ensure that a psychiatrist is at the detention facility a sufficient amount of time each week to provide timely and adequate treatment for inmates with serious mental illness, in accordance with the triage protocols established by the medical director and psychiatrist.

ORGANIZED DEC. 13, 1808



# MADISON COUNTY, ALABAMA

OFFICE OF
## BLAKE L. DORNING, SHERIFF

PHONE (256) 532-3413
FAX (256) 532-6976



MADISON COUNTY COURT HOUSE
100 NORTH SIDE SQUARE
HUNTSVILLE, ALABAMA 35801

**CHRISTOPHER STEPHENS**
CHIEF DEPUTY
PHONE 532-3414

**MAJOR RICK WEAVER**
ADMINISTRATIVE ASSISTANT
PHONE 532-3411



RECEIVED

AUG 0 2 2005

BY:

July 29, 2005

Dear Vendor,

The Request For Proposal requires that you submit the proposal through the Purchasing Department of the Madison County Commission. I request that, in addition, you also submit a copy to my office for review.

Sincerely,

Blake Dorning
Sheriff of Madison County



**DEFENDANT'S EXHIBIT**
20
Rick

ACH001412

**MADISON COUNTY COMMISSION**
**COURTHOUSE**
**HUNTSVILLE, ALABAMA 35801**
**REQUEST FOR PROPOSALS**
**PROPOSAL # _____**

The Madison County Commission and the Madison County Sheriff will receive Proposals until the date and time for Proposal closing for services meeting, exceeding, or equivalent to specifications.

Proposals will not be accepted in Room 701 of the Madison County Courthouse after 10: a.m. on Friday, August 26, 2005.

Failure to comply with any of the requirements contained in this Request for Proposals may result in the rejection of the entire Proposal submitted.

Any attachments hereto become a part of the Request and will remain in the Request file.

Brand names used in this Request for Proposal are for comparison purposes only and are not to be construed as indicating any preference. Any items or services submitted as equivalent to or exceeding specifications must be described in detail.

No errors will be corrected with Proposals after Requests are opened.

Each Proposer must possess proper state, county, and city license, certification, or other requirement imposed for engaging in the type activity for which Proposals are solicited.

The Madison County Sheriff requests Proposals for a comprehensive healthcare services system at the Madison County Detention Facility to provide inmates within the Detention Facility with necessary healthcare. It is the intent of Madison County and the Madison County Sheriff to award a healthcare services contract to a successful Proposer for a two-year term beginning October 1, 2005. Proposal minimum requirements are attached hereto.

Vendors **must** sign and notarize their Proposal. Failure to do so may result in rejection of your Proposal.

SUBMIT PROPOSAL TO:        MADISON COUNTY PURCHASING
                                                 100 NORTH SIDE SQUARE
                                                 ROOM 728
                                                 HUNTSVILLE, AL 35801

The Madison County Commission and the Madison County Sheriff reserve the right to accept or reject any and all Proposals in whole or in part.

Proposer must show on the envelope the Proposal number and opening date.

I hereby affirm that I have not been in any agreement or collusion among Proposers or prospective Proposers in restraint of freedom of competition, by agreement to propose at a fixed price or to refrain from proposing or otherwise.

**This Proposal must be notarized**                 FIRM: _____
                                                                        By: _____
Subscribed and sworn to before me                   STREET ADDRESS: _____
this _____ day of _____, 2005.                  CITY_____ STATE____ ZIP _____
                                                                        TELEPHONE # _____
_____                   FAX # _____
Notary Public

                                                                        _____
                                                                        Sherry Jones
                                                                        Madison County Purchasing Director        ACH001413

## REQUEST FOR PROPOSAL
## TO PROVIDE HEALTHCARE SERVICES
## AT THE MADISON COUNTY DETENTION FACILITY

| | |
|---|---|
| Issuance of Request for Proposal: | Thursday, July 28, 2005 |
| Pre-Proposal Conference: | Friday, August 12, 2005, 10:00 a.m. CDT |
| Deadline for Receipt of Proposals: | Friday, August 26, 2005, 10:00 a.m. CDT |
| Anticipated Award Date (subject to Madison County Commission approval): | Friday, September 2, 2005 |
| Deadline for Provider to Provide Transition Plan: | Friday, September 9, 2005 |
| Anticipated Contract Start Date: | Saturday, October 1, 2005 |

1.     **REQUEST FOR PROPOSAL:** The Madison County Sheriff ("Sheriff") requests proposals for a comprehensive healthcare services system at the Madison County Detention Facility in Huntsville, Alabama, to provide inmates within the Detention Facility with necessary healthcare. To be considered a valid proposal, <u>one original proposal and three duplicates</u> must be received at the following address no later than 10:00 a.m. CDT, Friday, August 26, 2005:

        Madison County Purchasing
        100 North Side Square
        Room 728
        Huntsville, AL  35801

2.     **TERM:** It is the intent of Madison County and the Sheriff to award a healthcare services contract to a successful proposer ("Provider") for a two-year term beginning October 1, 2005, and ending September 30, 2007, after receipt of proposals pursuant to this request for proposal. The Sheriff and Madison County intend to include in the contract a right to

ACH001414

automatically extend the term of the contract for an additional one-year term, provided such extension is in the best interests of the parties.

3.  **SCOPE OF SERVICES:**  The Sheriff intends for Provider to be the sole supplier of healthcare services (including pharmacy) and coordinator of the healthcare delivery system at the Detention Facility, including coordination and payment of all care rendered to inmates by healthcare providers outside the Detention Facility.  Provider shall be responsible for all healthcare for all inmates at the Detention Facility.  The term "healthcare" (or "medical care" as sometimes referred to herein) includes, but is not limited to, services provided by a general practitioner, psychiatric and psychological care, obstetric/gynecological care as well as dental care.

4.  **FACILITY:**  The Madison County Detention Facility is operated by the Sheriff. The Madison County Detention Facility consists of the following facilities: (1) the facility located at 815 Wheeler Avenue (commonly known as and referred to herein as the "Main Facility"), (2) the 9th and 10th floors of the Madison County Courthouse (commonly known as and referred to herein as the "Courthouse Facility"), and (3) the facility located at 700 Wheeler Avenue (commonly known as and referred to herein as the "Annex Facility"). These three facilities comprising the Madison County Detention Facility are sometimes collectively referred to herein as the "Jail" or the "Detention Facility".

The **Main Facility** is the newest of the three facilities and houses approximately 500 inmates.  The Main Facility serves as the intake center for the Detention Facility, and in 2004, 16,757 inmates were booked into the Detention Facility (averaging approximately 46 inmates admitted into the Detention Facility each day).  The Main Facility has a large booking area with two multi-person cells and several individual cells for the temporary housing of

North @ Booking Area 2417

ACH001415

inmates.  The Main Facility also currently has a large medical unit adjacent to the booking area, with multiple examination rooms (with examination tables), one dental office with associated equipment (dental chair, dental light, operatory, stools, lockable cart, x-ray machine, processor and loader, view box, amalgamator, curing light, autoclave, ultrasonic cleaner, wall cabinets, trays for instruments, handpieces, and instruments), three cells to house inmates for extended periods of time, one negative-pressure cell to house inmates suspected of having communicable diseases, one padded cell to house inmates evidencing severe mental health problems who are believed to be a danger to themselves, one medical records room and offices for medical management personnel.  The medical unit also has a room specially designed to house x-ray equipment, but the Sheriff does not have the associated x-ray equipment.  Portable x-ray equipment is currently brought on-site in the event that an inmate requires x-rays.  Provider will *language related to equipment* be expected to obtain necessary equipment to perform x-rays on-site, either by purchasing its own equipment or by bringing portable equipment on-site. The Main Facility medical unit has traditional office furniture (including filing cabinets, desks, and chairs), but Provider will be expected to provide its own photocopier, facsimile machines and additional telephones. Provider will have access to jail computers to track inmate arrests and movement between the facilities and to enter various healthcare data regarding inmates, but it is contemplated that Provider may *computers* use its own equipment to perform the contract.  A diagram showing the existing medical unit at the Main Facility and expected additions to the medical unit is attached hereto under Tab "A". Inmates are currently housed on two floors at the Main Facility.  Housing units at the Main Facility are arranged in a podular fashion, and triage rooms are situated adjacent to the housing units.  Pursuant to an Intergovernmental Jail Agreement between the Sheriff, Madison County, the City of Huntsville, and the City of Huntsville Public Building Authority, a substantial

ACH001416

addition is currently being constructed adjacent to the existing Main Facility.  When completed, the addition will house an additional 800+ inmates.  Within the next two years, the addition should be complete and, upon its completion, the Sheriff intends to close the Courthouse Facility and the Annex Facility except to temporarily house inmates.  At this time, inmates with greater medical needs are typically housed at the Main Facility, and the Sheriff transfers inmates requiring additional healthcare to the Main Facility at the request of Provider.  Nurses are on-site at the Main Facility twenty-four hours a day, seven days a week.

The **Courthouse Facility** is the oldest of the three facilities and houses as many as 200 inmates.  The Courthouse Facility has a nurse's station, a medical examination room with an examination table, a medical records room, and a four-person cell across the hallway from the nurse's station to house inmates with "special needs".  The Courthouse Facility medical unit has traditional office furniture (including filing cabinets, desks, and chairs), but Provider will be expected to provide its own photocopier, facsimile machines and additional telephones.  The Courthouse Facility primarily houses sentenced inmates and those inmates who are awaiting trial for felonies.  The Sheriff typically houses inmates requiring more frequent healthcare at the Main Facility.  In the event an inmate housed at the Courthouse Facility requires continuous medical treatment, the inmate is transported from the Courthouse Facility to the Main Facility.  The Courthouse Facility does not have dental equipment available for use, and inmates requiring dental care are transported to the Main Facility to obtain dental care.  Nurses are on-site at the Courthouse Facility twenty-four hours a day, seven days a week.

The **Annex Facility** is across the street from the Main Facility on Wheeler Avenue.  The Annex Facility currently houses work-release inmates, misdemeanants, and other inmates classified as minimum security risks.  The Annex Facility consists of Annex I and Annex

ACH001417

II.   Annexes I and II are dormitory-style housing units.   Annex I houses approximately 160 inmates and is separated into two housing units, Annex I-Northside and Annex I-Southside. Currently, most inmates at the Annex Facility are housed in Annex I.   Approximately 15 inmates who have been specially selected to work in the Sheriff's vehicle fleet maintenance department are housed in Annex II.   Annex II will house approximately 115 inmates.   Although a medical station is located at the Annex Facility, the medical station is not used frequently and healthcare is often provided to inmates within the Annex Facility if feasible.   If healthcare cannot to be rendered to an inmate at the Annex Facility, the inmate is transported across the street to obtain care at the Main Facility.   Medical personnel are required to visit the Annex Facility at least three times per day to administer medication to inmates, retrieve sick call request forms, and be available for inmates who have medical needs.

5.      **INMATE POPULATION:** The Detention Facility houses both male and female pretrial detainees, sentenced inmates with sentences of generally less than one year, and work-release inmates.   The Sheriff houses both misdemeanants and felons.   Pursuant to an Intergovernmental Jail Agreement entered into between Madison County, the Sheriff, the City of Huntsville, and the City of Huntsville Public Building Authority, the Sheriff houses City of Huntsville pre-trial detainees and sentenced inmates (misdemeanants).   Pursuant to the Intergovernmental Jail Agreement, these City of Huntsville inmates are provided healthcare just as any other inmate in the Sheriff's custody.   The daily population of the Detention Facility over the past 12 months has increasingly exceeded 800 inmates.   A Daily Inmate Count sheet attached hereto under Tab "B", indicates that, as of approximately midnight on July 20, 2005, the Detention Facility housed 835 inmates.   As of July 20, 2005, approximately 90 of the 835 inmates were assigned to the work-release program.   Inmates assigned to the work-release

*work release included IN 800 pop*

ACH0014189

program and working within the community represent that they will be responsible for the payment of their own healthcare while assigned to and working on the work-release program. These work-release inmates are housed at the Detention Facility when not working in the community. Provider will be required to provide necessary healthcare to these work-release inmates while the work-release inmates are housed within the Detention Facility.

6.   **NEGOTIATION OF CONTRACT:** All proposals shall become the property of the Sheriff upon submission. The Sheriff and Madison County reserve the right to negotiate the final price and terms subsequent to the submission of proposals from the selected qualified proposers.

7.   **PRE-PROPOSAL REQUESTS FOR INFORMATION:** A tour of the Detention Facility may be provided to potential proposers upon written request. Questions concerning this Request for Proposal or requests to tour the Detention Facility must be directed in writing to:

> Madison County Sheriff Blake Dorning
> Madison County Courthouse
> 100 North Side Square
> Huntsville, AL 35801
> (FAX) 256-532-6976
> (PHONE) 256-532-3416      *532-3412 Sheriff's Office*

A pre-proposal conference will be held in the Classroom at the Sheriff's Annex (715 Wheeler Avenue, Huntsville, AL 35801) at 10:00 a.m. on August 12, 2005. At this conference, the Sheriff's staff will be available to answer questions regarding the request and provide additional information regarding the current operation of the Detention Facility.

8.   **MINIMUM QUALIFICATIONS AND REQUIREMENTS:** The Sheriff requires that any Provider meet certain minimum qualifications. All proposals must contain sufficient information concerning the proposed inmate healthcare program for the Detention

Facility to evaluate whether minimum qualifications and mandatory requirements are met. All proposals must address the following:

*Corp. Overview) Qualifications Language Partnership language*

A. ✓ **ORGANIZATION:** Provider must be organized and existing for the purpose of providing healthcare services. Provider must have an on-site manager/coordinator with jail healthcare experience to serve as a liaison between Provider, the Sheriff, and representatives of the Sheriff or the Madison County Commission. *#1 Financial*

B. ✓ **EXPERIENCE:** Provider must have at least three (3) continuous years of corporate experience in administering healthcare programs. *# 2 References Experience*

*Certificate Insurance (include in language + section)*

C. **INSURANCE:** Provider must carry acceptable professional liability insurance providing coverage for claims including professional liability, negligence, and claims asserted pursuant to 42 U.S.C. § 1983, in an amount of $1,000,000 per occurrence and $3,000,000 in the aggregate and name Madison County, the Sheriff, and their agents and employees as additional insureds.

*language refer to Transition Timeline*

D. ✓ **SPECIFICALLY DESIGNED SERVICE AND TRANSITION:** Provider must demonstrate its ability to provide a healthcare system (including written policies and procedures) specifically designed and tailored for the operation of the Detention Facility. Provider must be able to demonstrate that it can fulfill the terms of any contract issued as a result of this Request for Proposal as of October 1, 2005. Southern Health Partners, Inc. ("SHP") is the current provider of healthcare services at the Detention Facility. SHP's contract expires on September 30, 2005. During the month of September, Provider will be expected to participate in various meeting with SHP representatives and the Sheriff's staff to ensure the orderly transition of healthcare services from the current provider and to ensure that detention officers are introduced to Provider and trained by Provider regarding any requested changes to policies and procedures. Provider will be required, on or before September 9, 2005, to provide the Sheriff with a written transition plan and a copy of a policy and procedure manual (specifically designed for use in the Detention Facility) to be used upon transition. *#3 Transition Plan Timeline*

*language*

E. **INDEMNIFICATION:** Provider must indemnify, defend, and hold harmless the Sheriff, Madison County and any and all of their agents and employees from any claims arising from the delivery of healthcare services to inmates at the Detention Facility.

*language refer to exhibit*

F. **NCCHC STANDARDS:** Healthcare services must be provided in substantial compliance with the current Jail Health Standards published by the National Commission on Correctional Healthcare (NCCHC). Provider may, but is not required to, seek accreditation from NCCHC. *#4 NCCHC Standards*

DOCSHSV\157494\1\        7        ACH001420

G.   **INMATE CARE STANDARDS:**  Provider must represent and warrant that services provided at the Detention Facility will at all times be in compliance with the November 8, 2000, March 26, 2001, and November 26, 2001, Orders entered in the case of <u>Marshall v. Dorning</u>, In the United States District Court for the Northern District of Alabama, CV-78-C-5010-NE.  Copies of these Orders are attached hereto under Tabs "C," "D," and "E."  Furthermore, Provider must represent and warrant that such services shall at all times be in compliance with the following requirements:

Inmates in the detention facility shall have access at all times to constitutionally adequate healthcare.  To this end, Provider must provide 24-hour/7 days per week nursing coverage at the Courthouse Facility and the Main Facility, provided that the Main Facility has a sufficient number of nurses to address in a timely manner the healthcare needs of any inmates held at the annex buildings.  In addition, all 14-day physical exams must be performed by nurses or higher level practitioners appropriately trained in physical assessment. Licensed practical nurses must be supervised by a registered nurse, nurse practitioner, physician's assistant, or physician as required by the Alabama Board of Nursing.  The medical director shall review and approve each physical assessment performed on any inmate.

On an annual basis, the medical director, in conjunction with the treating psychiatrist (with regard to psychiatric illness) and obstetrician/gynecologist (with regard to obstetrical and gynecological issues), shall review and update triage protocols and nursing protocols to ensure that they are in accordance with the community standard of care specific to each medical condition, and train all nurses on the proper use of these protocols.  The triage protocols developed by the medical director shall indicate whether a condition requires routine (within four weeks), urgent (within two days), or emergency (immediate) referral to a physician.  There shall be sufficient physician hours each week to ensure that inmates are seen by a physician at the appropriate interval as determined by the triage protocol.

The medical director shall review the referral decisions by nurses to physicians on a weekly basis to ensure that individuals whose serious medical, dental, and mental health conditions require treatment are being referred in an appropriate and timely way consistent with the standard of care.  This shall include referral of individuals newly admitted to the detention facility who suffer from acute or chronic illnesses.  If the medical director determines that

referrals are not appropriate and timely, he or she shall take immediate steps to counsel and train the nurses in proper referral practices.

An obstetrician/gynecologist shall be available at the detention facility at least twice each month to provide adequate prenatal care to pregnant women and to treat women with gynecological problems. No more than once a month, a certified registered nurse practitioner specializing in obstetrics/gynecology may visit the detention facility in place of the obstetrician/gynecologist. If, according to the triage protocols developed by the medical director and obstetrician/gynecologist, a female prisoner requires treatment prior to the next visit by the obstetrician/gynecologist, she shall receive such treatment at the appropriate interval.

Provider shall ensure that a psychiatrist is at the detention facility a sufficient amount of time each week to provide timely and adequate treatment for inmates with serious mental illness, in accordance with the triage protocols established by the medical director and psychiatrist.

H.   **OFF-SITE SERVICES:** All proposals must contain such information to allow the Sheriff to determine what hospital or other healthcare provider *# 6* will be used for non-emergency and emergency off-site services. Off-site medical costs are a major concern of the Sheriff and the Madison County Commission. Providers are encouraged to offer staffing solutions which will minimize the need to provide emergency, non-emergency, and specialized off-site healthcare. Provider will be required to identify the need for inmate care to be rendered outside the Detention Facility and to schedule, coordinate, and pay for all non-emergency, emergency, *and # 14* specialized healthcare rendered to inmates inside and outside the Detention Facility. Provider will be required to identify the need for inpatient hospitalization of inmates and to schedule, coordinate, and pay for any inpatient hospitalization for such inmate. Provider shall be responsible for all institutional charges, physician charges and any and all additional charges for healthcare, including but not limited to ambulance charges.

I.   **INMATE CO-PAYMENT:** The Sheriff has a policy of charging inmates a $5.00 co-payment fee for certain pharmaceuticals and services the on-site healthcare provider provides to inmates. No inmates are denied healthcare or necessary pharmaceuticals based on their ability or lack thereof to pay the co-payment fee. Provider will be required to complete appropriate documentation and provide the same to the Sheriff or his

*# 7*
*Inmate medical chart co-pay info*

*Language*

ACH001422

designee to ensure that co-payment charges are deducted from appropriate inmate jail accounts.

J.  **SATISFACTION WITH HEALTHCARE PERSONNEL:**   In recognition of the sensitive nature of the provision of medical services in the Detention Facility, Provider will remove any employee or contractor from the Detention Facility in the event the Sheriff becomes dissatisfied with any healthcare personnel provided by Provider and provides written notice regarding the same.   Provider will be required to conduct appropriate background checks and submit appropriate documentation to the Sheriff regarding each employee or contractor providing services herein.   The Sheriff will also have the option of performing an independent background check of all employees and contractors, and Provider shall obtain any necessary waivers or consents to allow the Sheriff to conduct certain background checks. The Sheriff's option to perform an independent background check in no way absolves Provider from its obligations hereunder. All persons rendering services on behalf of Provider shall be licensed, certified, or registered, as appropriate, in their respective areas of expertise as required by applicable Alabama law, and appropriate supervision shall be provided as required by applicable Alabama law.

*Language*
*Sheriff to provide Criminal background check. ACH medical + licensure verification*

K.  **TRANSPORTATION AND MOVEMENT OF INMATES:**   Non-emergency transportation of inmates will be performed by appropriate members of the Sheriff's staff.  Emergency transportation of inmates will be performed by appropriate emergency response personnel summoned by Provider.

L.  **INMATE MEDICAL RECORDS:** Provider will establish policies and procedures addressing the medical record format and documentation requirements.   Provider will ensure that medical record formats are maintained in a standardized format in accordance with prevailing medical regulations.  A medical record will be established for each inmate who receives care beyond the initial intake screening.  All proposals should include sample forms that may be used as part of an inmate's record at the Detention Facility.    *(RE: CHART)*

*# 7*

M.  **REPORTING REQUIREMENTS:** Provider must notify the Sheriff's staff of any inmate believed to have any medical or mental health condition posing a potential threat to inmate or officer wellbeing (such as inmates suspected of having tuberculosis or other communicable diseases or conditions), provide general medical information regarding these medical conditions and provide protocol to be taken when housing, transporting, and interacting with inmates suspected of having these diseases or conditions. Provider must provide a comprehensive internal quality improvement program, which includes conducting an on-going evaluation of compliance with its policies and procedures (in compliance

*Language*

*Need CQI Program*

*HIPAA*
*#8 CQI*
*#6 Utilization Mgmt*

ACH001423