C.  **INDEMNIFICATION:** ACH agrees to indemnify and save harmless Madison County, and the Sheriff, and their respective supervisors, agents, officers, employees, and officials from and against any and all liability, loss, damages, interest, judgments and liens growing out of any and all costs and expenses (including, but not limited to, reasonable attorney fees and disbursements) arising out of or incurred in connection with any and all claims, demands, suits, actions or proceedings, which may be brought against Madison County, the Sheriff, respective supervisors, agents, officers, employees, and officials by reason of, or as the result of (1) acts or omissions of ACH, its agents, servants, or employees related in any way to or while in the performance of this Agreement; (2) any allegations of an act or omission, conduct or misconduct, of ACH, its agents, servants or employees not included in the paragraph above and for which the County, the Sheriff, or their agents, servants, or employees are alleged to be liable; and (3) any allegation of employment discrimination by an ACH employee.

Madison County and the Sheriff agree to indemnify and save harmless ACH from and against any and all liability, loss, damages, interest, judgments and liens growing out of any and all costs and expenses (including, but not limited to, reasonable attorney fees and disbursements) arising out of or incurred in connection with any and all claims, demands, suits, actions or proceedings, which may be brought against ACH by reason of, or as the result of (1) acts or omissions of Madison County, the Sheriff, or their respective supervisors, agents, officers, employees, and officials related in any way to or while in the performance of this Agreement; (2) any allegations of an act or omission, conduct or misconduct, of Madison County, the Sheriff, or their respective supervisors, agents, officers, employees, and officials not included in the paragraph above and for which ACH is alleged to be liable; and (3) any allegation of employment discrimination by Madison County, the Sheriff, or their respective supervisors, agents, officers, employees, and officials.

D.  **NCCHC STANDARDS:** Healthcare services must be provided in substantial compliance with the current Jail Health Standards published by the National Commission on Correctional Healthcare (NCCHC). ACH may, but is not required to, seek accreditation from NCCHC.

E.  **INMATE CARE STANDARDS:** ACH represents and warrants that services provided at the Detention Facility will at all times be in compliance with all aspects of the November 8, 2000, March 26, 2001, and November 26, 2001, Orders entered in the case of Marshall v. Dorning, In the United States District Court for the Northern District of Alabama, CV-78-C-5010-NE. In the event that any provision varies from those requirements contained within the consent orders, then the requirements within the consent orders will control. Furthermore, ACH represents and warrants that such services shall at all times be in compliance with the following requirements:

Inmates in the detention facility shall have access at all times to constitutionally adequate healthcare. To this end, ACH must provide 24-hour/7 days per week nursing coverage to address in a timely manner the health care needs of any inmate. In addition, all 14-day physical exams must be performed by nurses or higher level practitioners appropriately trained in physical assessment. Licensed practical nurses must be supervised by a registered nurse, nurse practitioner, physician's assistant, or physician as required by the Alabama Board of Nursing.

ACH000262

The medical director shall review and approve each physical assessment performed on any inmate.

On an annual basis, the medical director, in conjunction with the treating psychiatrist (with regard to psychiatric illness) and obstetrician/gynecologist (with regard to obstetrical and gynecological issues), shall review and update triage protocols and nursing protocols to ensure that they are in accordance with the community standard of care specific to each medical condition, and train all nurses on the proper use of these protocols. The triage protocols developed by the medical director shall indicate whether a condition requires routine (within four weeks), urgent (within two days), or emergency (immediate) referral to a physician. There shall be sufficient physician hours each week to ensure that inmates are seen by a physician at the appropriate interval as determined by the triage protocol.

The medical director shall review the referral decisions by nurses to physicians on a weekly basis to ensure that individuals whose serious medical, dental, and mental health conditions require treatment are being referred in an appropriate and timely way consistent with the standard of care. This shall include referral of individuals newly admitted to the detention facility who suffer from acute or chronic illnesses. If the medical director determines that referrals are not appropriate and timely, he or she shall take immediate steps to counsel and train the nurses in proper referral practices.

An obstetrician/gynecologist shall be available at the detention facility at least every other week (this does not allow the physician to manipulate the required days here) to provide adequate prenatal care to pregnant women and to treat women with gynecological problems. No more than once a month, a certified registered nurse practitioner specializing in obstetrics/gynecology may visit the detention facility in place of the obstetrician/gynecologist. If, according to the triage protocols developed by the medical director and obstetrician/gynecologist, a female prisoner requires treatment prior to the next visit by the obstetrician/gynecologist, she shall receive such treatment at the appropriate interval.

ACH shall ensure that a psychiatrist is at the detention facility a sufficient amount of time each week to provide timely and adequate treatment for inmates with serious mental illness, in accordance with the triage protocols established by the medical director and psychiatrist.

F. **OFF-SITE SERVICES**: ACH will identify the need for inmate care to be rendered outside the Detention Facility and to schedule, coordinate, and pay for all non-emergency, emergency, and specialized healthcare rendered to inmates inside and outside the Detention Facility. ACH will identify the need for inpatient hospitalization of inmates and to schedule, coordinate, and pay for any inpatient hospitalization for such inmate. ACH is responsible for all institutional charges, physician charges and any and all additional charges for health care, including but not limited to ambulance charges up to an agreed upon limit described elsewhere herein. ACH will review every invoice submitted to it for payment of off-site services to confirm that such services were actually provided to the inmate while he was in the custody of the Sheriff. When off-site care, including hospital care, is required for approved medical reasons, ACH shall arrange for said care and be financial responsible for cost of ambulance transportation, if medically indicated, and the cost of all approved medical and dental care,

ACH000263

diagnostic testing and supplies provided off-site while the Patient is a Detention Facility inmate, subject to the financial liability limit noted in Section T. ACH shall arrange all off-site treatment and care in accordance with the Sheriff's policies and procedures.

G. **SPECIFIC OBLIGATIONS:**

1. ACH will identify the need, schedule and coordinate:

   All physician services, supporting diagnostic examinations, follow up for health problems identified by screening or laboratory tests, non-emergency and emergency medical care rendered to inmates inside and outside the Detention Facility;

   Inpatient hospitalization or offsite specialty service for any inmate at the Detention Facility;

   Providing a responsible physician who will conduct sick call daily and provide an on call physician or a designee seven days per week, twenty four hours per day for emergency situations;

   Psychiatric, psychological and counseling services for any inmates inside the Detention Facility;

   Providing a total pharmaceutical system for the Detention Facility;

   Providing a medical detoxification program for drug and/or alcohol addicted inmates;

   Providing all equipment with the exception of capital outlay equipment. ACH shall provide at its own expense supplies necessary for ACH's performance at the Detention Facility;

   Providing all medical supplies;

   Providing consultation services to the Sheriff and Director of Corrections on any and all aspects of the health care delivery system at the Detention Facility, including but not limited to, a comprehensive strategic plan; site specific policies, procedures and protocol; peer review; introductory in-service training for correctional officers with regard to accessing inmate healthcare services; continuous quality improvement; cost containment; utilization management and risk management programs; HIPAA and NCCHC compliance programs specific to the Detention Facility's medical operations;

   Providing a centralized billing system for health care providers;

Providing a customized Electronic Medical Records (EMR) System to assist in the risk management of all inmate medical and mental health issues.

Administering emergency medical care to any employee or visitor at the Detention Facility who requires such care.

Administering, within twenty-four hours of arrival and prior to being placed in a general population cell outside of the booking area, for all new inmates at the Detention Facility, an initial medical, oral and psychological screening. A standard form to record findings of the initial screening and evaluation will be utilized. The form is placed in the patient's medical file. At a minimum, initial screenings will include:

- Documentation of current illnesses and health problems, including medications taken, and special health requirements.

- Behavior observations, including state of consciousness, mental status, and whether the inmate is under the influence of drugs or alcohol.

- Notation of body deformities, trauma markings, bruises, ease of movement, etc.

- Conditions of skin including infestations.

- Referral of the inmate for special housing, emergency health services, or additional medical specialties will be made as needed.

Administering a full health assessment, including a comprehensive physical and psychological evaluation on any inmate confined at Detention Facility within fourteen days of arrival at the facility. This examination will conform to national medical standards, and be performed by a qualified medical professional. At a minimum, the comprehensive evaluation will include:

- Review of the receiving screening results by the Medical Director or the responsible physician

- Collection of additional data to complete the medical, dental and psychological histories

- Review of immunization history and update scheduled as needed Laboratory and/or diagnostic tests (as determined

by the responsible physician to detect diseases, the assessment will include:

a) TB testing
b) Sexually transmitted diseases testing including HIV
c) Full blood work up
d) Dental examination
e) Vision examination
f) Recording of height, weight, blood pressure and temperature
g) Other tests and examinations as appropriate
h) Medical (including gynecological assessments of females) with appropriate comments
i) Review of the results of the medical examination and tests, and identification of problems by physician
j) Obstetrical follow-up.

Administering a psychological screening to include at a minimum an interview conducted by the appropriate staff in which inquiries into the items listed below are made: History of psychiatric hospitalization and outpatient treatment; Family history; Current psychotropic medications; suicidal ideation and suicidal behavior; Drug usage; Alcohol usage; History of sex offenses; History of outwardly violent behavior; History of victimization or abuse; Special education placement; History of cerebral trauma and seizures; Emotional response to detainment.

ACH shall perform the collection of physical evidence (hair, blood, saliva) for the purpose of DNA testing on-site with signed consent from the inmate in accordance with applicable NCCHC guidelines. Court ordered collection of physical evidence shall be referred to the appropriate emergency room. ACH shall not be financially responsible for any costs associated with the collection or testing of physical evidence, including but not limited to any associated medical and/or laboratory fees, added personnel and court costs and the costs of DNA collection.

ACH shall perform body cavity searches on-site with signed consent from the inmate in accordance with applicable NCCHC guidelines. Court ordered body cavity searches shall be referred to the appropriate emergency room. ACH shall not be financially responsible for any costs associated with a body cavity search, including but not limited to any associated medical and/or laboratory fees, added personnel and court costs.

ACH000266

ACH shall provide health education materials to the Sheriff for inmate education.

ACH shall review at scheduled quality assurance meetings the healthcare reports with the Sheriff and/or his designee concerning the overall operation of the healthcare services program and the general health of the inmates at the Detention Facility.

ACH representatives shall meet, in accordance with a schedule agreed to by the Sheriff and ACH, with the Sheriff and/or his designee concerning procedures within the Detention Facility and any proposed changes in health related procedures or other matters which either party deems necessary.

ACH will not be responsible for the following: elective care, infant care and certain other enumerated expenses as provided herein. ACH shall not provide elective medical care to inmates. Elective medical care shall be defined as care which, if not provided, would not, in the opinion of ACH's medical director (licensed physician employed by ACH), cause the inmate's health to deteriorate or cause harm to the inmate's well-being. Decisions concerning elective medical care shall be consistent with the applicable American Medical Association ("AMA") standards. ACH shall not be financially responsible for the cost of medical care provided to infants born to Detention Facility inmates. ACH will provide and be financially responsible for prenatal care, testing and hospital care related to pregnancy and delivery as medically indicated for Detention Facility inmates, subject to the financial liability limit noted in Section T, but newborn/infant care is not within the scope of this Agreement. ACH will not be responsible for any other expenses, including, but not limited to, dentures and dental restoration, optical care, eyeglasses and optical supplies, prosthetics and prosthetic supplies.

2. Duties and Obligations of the Sheriff:

The Sheriff shall maintain responsibility for the physical security of the Detention Facility and the continuing security of the inmates. ACH and the Sheriff agree that adequate security services are necessary for the safety of the agents, employees and subcontractors of ACH as well as of the security of inmates and the Sheriff's staff consistent with a correctional setting. The Sheriff will provide security sufficient to enable ACH and its personnel to safely provide healthcare services described in this Agreement. The Sheriff and Madison County shall not be liable for loss of or damage to equipment and supplies of ACH, its agents, employees or subcontractors unless such loss or damage was caused by the

sole negligence of the Sheriff's employees. The Sheriff shall provide use of existing office furniture, including but not limited to, filing cabinets, desks and chairs and all necessary utilities currently in place at the existing healthcare facilities located in the Detention Facility. Upon termination of this Agreement, ACH shall return to Madison County and to the Sheriff possession and control of all County-owned medical and/or office equipment. At such time, the office's furniture shall be in good working order with allowances made for reasonable wear and tear.

The Sheriff shall provide, as needed, information pertaining to inmates that ACH and the Sheriff mutually identify as reasonable and necessary for ACH to adequately perform its obligations to the Sheriff.

H.  **INMATE CO-PAYMENT:** The Sheriff has a policy of charging inmates a $5.00 co-payment fee for certain pharmaceuticals and a $10.00 co-payment fee for certain services the on-site healthcare provider provides to inmates. No inmates are denied healthcare or necessary pharmaceuticals based on their ability or lack thereof to pay the co-payment fee. ACH will complete appropriate documentation and provide the same to the Sheriff or his designee to ensure that co-payment charges are deducted from appropriate inmate jail accounts.

I.  **SATISFACTION WITH HEALTHCARE PERSONNEL:** In recognition of the sensitive nature of the provision of medical services in the Detention Facility, ACH will remove any employee or contractor from the Detention Facility in the event the Sheriff becomes dissatisfied with any healthcare personnel provided by ACH and provides written notice regarding the same. ACH will be required to conduct appropriate background checks and submit appropriate documentation to the Sheriff regarding each employee or contractor providing services herein. The Sheriff will also have the option of performing an independent background check of all employees and contractors, and ACH shall obtain any necessary waivers or consents to allow the Sheriff to conduct certain background checks. The Sheriff's option to perform an independent background check in no way absolves ACH from its obligations hereunder. All persons rendering services on behalf of ACH shall be licensed, certified, or registered, as appropriate, in their respective areas of expertise as required by applicable Alabama law, and appropriate supervision shall be provided as required by applicable Alabama law.

J.  **TRANSPORTATION AND MOVEMENT OF INMATES:** Non-emergency transportation of inmates will be performed by appropriate members of the Sheriff's staff. Emergency transportation of inmates will be performed by appropriate emergency response personnel summoned by ACH.

K.  **INMATE MEDICAL RECORDS:** ACH will establish policies and procedures addressing the medical record format and documentation requirements utilizing the Electronic Medical Records System. ACH will ensure that medical record formats are maintained in a standardized format in accordance with prevailing medical regulations. A medical record will be established for each inmate who receives care beyond the initial intake

ACH000268

screening. ACH will maintain a comprehensive health care record that at a minimum will include the following: Complete receiving; Health assessment data forms; Master problem list; All findings diagnoses treatments, and dispositions; Prescribed medication and their administration; Reports of laboratory, x-ray and diagnostic studies; Signature and title of each documenter; Consent and refusal forms when applicable; Release of information forms when applicable; Place, date and time of health encounter; Discharge summary of hospitalizations; Mental Health Program. Medical records of inmates shall be kept separate from the inmates' confinement records. A complete original of the applicable medical records shall be available to accompany each inmate who is transferred from the Detention Facility to another location for off-site services or to another institution. Medical records shall be confidential, subject to applicable law regarding confidentiality of such records. ACH shall comply with Alabama and federal laws and the Sheriff's policies with regard to access by inmates and jail staff to medical records. No information contained in the medical records of an inmate shall be released by ACH except as provided by the Sheriff's policy, by a Court order or otherwise in accordance with applicable laws. At expiration of the contract, all medical records shall be delivered to and remain the property of the Sheriff. However, the Sheriff shall provide ACH with reasonable on-going access to all medical records even after the expiration of this Agreement for the purpose of defending litigation. Inmate medical records shall at all times be the property of the Madison. County Sheriff and ACH shall make available to the Sheriff, unless otherwise specifically prohibited, at the Sheriff's request, all records, documents and other papers relating to the direct delivery of healthcare services to Detention Facility inmates hereunder. During the period of this Agreement, and for a reasonable time thereafter, the Sheriff will provide ACH, at ACH's request, the Sheriff's record relating to the provision of healthcare services to inmates as may be reasonably requested by ACH in connection with an investigation of, or defense of, any claim by a third party related to ACH's conduct. Consistent with the applicable state and federal laws and the foregoing provisions, the Sheriff will make available to ACH such records as are maintained by the Sheriff as ACH may reasonably request. Any such information provided by the Sheriff to ACH that the Sheriff considers confidential shall be kept confidential by ACH and shall not, except as may be required by law, be distributed to any third party without prior written approval by the Sheriff. Notwithstanding any provision of this Agreement to the contrary, the Sheriff's internal affairs investigation records shall not be required to be provided to ACH or any other person except as may be required by law.

    L.  **REPORTING REQUIREMENTS:** ACH must notify the Sheriff's staff of any inmate believed to have any medical or mental health condition posing a potential threat to inmate or officer wellbeing (such as inmates suspected of having tuberculosis or other communicable diseases or conditions), provide general medical information regarding these medical conditions and provide protocol to be taken when housing, transporting, and interacting with inmates suspected of having these diseases or conditions. ACH must provide a comprehensive internal quality improvement program, which includes conducting an on-going evaluation of compliance with its policies and procedures (in compliance with the requirements contained within relevant consent orders and this contract), with monitoring results documented and reported on a quarterly basis to the Sheriff. ACH must provide monthly statistical utilization reports of services provided, including all off-site services provided sorted by provider and by inmate. ACH must provide monthly staffing reports describing all staffing for the previous month by name, position, location and number of hours. The monthly statistical reports must, <u>at a minimum,</u> include the following information:

| |
|---|
| **ADMITTING INFORMATION** |
| Number of inmates admitted to the Madison County Detention Facility during the previous month. |
| **INTAKE SCREENING** |
| Number of newly admitted inmates whose intake screening forms were not reviewed by a qualified healthcare professional within 24 hours of intake. |
| Out of the number of intake screening forms not reviewed by a qualified healthcare professional within 24 hours of intake (number listed above), number of these inmates who were released from the Madison County Detention Facility less than 24 hours from the time they were admitted to the Madison County Detention Facility. |
| Percent of intake screening forms reviewed within 24 hours of intake for inmates remaining in the Madison County Detention Facility more than 24 hours. |
| **PHYSICALS AND TB TESTING** |
| Number of inmates who should have received their 14-day physicals, including TB tests, during the previous month. |
| **PHYSICALS** |
| Number of inmates who received their physicals within 14 days of their incarceration in the Madison County Detention Facility. |
| Number of inmates who did not receive physicals because they had a recent physical from previous incarceration. |
| Number of inmates who refused their physical. |
| Number of inmates who received their physicals after 14 days but before 21 days of intake. |
| Percent of inmates who received their physicals within 21 days of intake, who had recent physicals, or who refused their physicals. |
| **TB TESTING** |
| Number of inmates who received a mantoux test within 14 days of intake. |
| Number of inmates who refused a mantoux test. |
| Number of inmates who received a mantoux test after 14 days of intake. |
| Number of inmates who did not receive a mantoux test because of recent mantoux testing from previous incarceration in the Madison County Detention Facility or because the inmate reported a prior PPD. |
| Percent of inmates to be tested who received a mantoux test within 14 days of incarceration, who received a mantoux test after 14 days of intake, who had recently been tested, or who reported a prior PPD. |

ACH000270

| |
|---|
| **MANTOUX TEST READING** |
| Number of inmates who had their mantoux test read between 48 and 72 hours after it was implanted. |
| Number of mantoux tests that could not be read because the inmate had been released from jail. |
| Percent of mantoux tests read between 48 and 72 hours after implantation. |
| **TB CHEST X-RAYS AND RESULTS** |
| Number of inmates who had a positive result to the mantoux test. |
| Number of inmates who received a chest x-ray within 96 hours of a positive mantoux test result. |
| Number of inmates who did not receive a chest x-ray because they had been released from jail. |
| Number of inmates who received chest x-rays who were started on INH therapy. |
| Number of inmates who were diagnosed with active tuberculosis after receiving a chest x-ray. |
| Number of inmates diagnosed with active tuberculosis during previous month. |

On-site visits by the medical doctor, OB/GYN, psychiatrist, and dentist at the Madison County Detention Facility for the month should be listed by inmate, provider, time spent on-site, and location of visit. The nursing schedule for the month should also be provided.

The number of inmates who were identified as having certain chronic conditions during the previous month should be listed as follows:

- Diabetes
    - Number of insulin-dependent
    - Number of non-insulin dependent
- Hypertension
- Seizures
- Diagnosed Mental Illness
- Asthma
- HIV/AIDS

    **M. MEDICAL EQUIPMENT AND SUPPLIES**: ACH will be responsible for providing and paying for all equipment and supplies necessary for ACH's performance at the Detention Facility, including, but not limited to, batteries, thermometers, blood pressure cuffs, oxygen, etc.

    **N. PHARMACEUTICALS**: ACH must provide a pharmaceutical supply in accordance with federal, state and local laws that meets the needs of the inmate population.

ACH000271

Medications shall be administered to inmates as prescribed. Appropriately trained medical personnel will administer medications and the administration of each dose will be documented. Medications must be maintained under proper conditions and in a secure area. ACH will ensure that appropriate quality and cost control measures are in place to reduce the unnecessary, wasteful, or redundant ordering of or distribution of formulary items.

ACH will comply with all applicable state, federal regulations, and ACA standards regarding prescribing, dispensing, administering, and procuring pharmaceuticals. Procedures will define timely procurement, dispensing, distribution, accounting, and disposal of pharmaceuticals. Records will be maintained to ensure adequate control of and accountability for all medications. Inmates will not prepare, dispense, or administer medication except for self-medication programs approved the Sheriff and ACH.

Drug storage and medication will not contain any outdated, discontinued, or recalled medications. All medications will be stored under proper conditions of sanitation, temperature, light, moisture, ventilation, segregation, and security. Antiseptics, other medications for external use, and disinfectants will be stored separately from internal and injectable medications. An adequate and proper supply of antidotes and other emergency medications, and related information will be readily available to health care staff. Prescription medications are administered or delivered to the inmate only upon the order of a physician, dentist, or other legally authorized individual. ACH will determine the prescriptive practices for the facilities. Medications are prescribed only when clinically indicated and will be documented by a form approved by the Medical Director of ACH. ACH will work with pharmaceutical companies to assure the lowest possible pharmaceutical cost.

Medications are only dispensed by licensed individuals; each prescription is labeled in accordance with applicable regulations with the following information: date, pharmacy prescription number, patient name, name of the drug, strength, amount dispensed, directions to the patient for use, prescriber name, and other pertinent information. Health personnel who have been trained and/or licensed can only pass medications. Administration of medications or their refusal is recorded on the inmate's log. Inmates on abusable medications are observed to ensure that the medications are taken and not hoarded.

    **O.** **MEDICAL WASTE:** ACH will be responsible for the removal of all medical waste associated with the provision of healthcare at the Detention Facility.

    **P.** **CHRONIC CARE CLINICS:** ACH must establish a plan for the identification, treatment and monitoring of inmates with chronic illnesses and special healthcare needs. ACH will be required to continue "chronic care clinics" for those persons identified with specified chronic illnesses and conditions (diabetes, hypertension, mental illness, HIV/AIDS, tuberculosis, asthma, seizures, etc.). ACH has defined a chronic health problem as an illness which is either ongoing or recurring. To provide an effective and efficient health care delivery system for chronic ill patients, ACH identifies the number of inmates with specific chronic conditions, and individual treatment plans are developed or reviewed for each of these inmates which includes: instructions regarding medications; special therapies; exercise; diet; the type and frequency of laboratory; other diagnostic testing; frequencies of follow up for reevaluation of the inmate's condition; and adjustment of the treatment plan as needed. Chronic clinics are

ACH000272

established to enable inmates to have scheduled visits to the health care provider. Educating the inmate to understand the seriousness of their conditions can create a more workable outcome for both the health care provider and the patient. Counseling and self-care instructions are given to these inmates to assist them while detained and upon their return to the community which is documented in the inmate's medical record.

Q. **STAFFING PLANS:** ACH will provide necessary and appropriate staffing in order to meet the terms of this contract and applicable consent orders. ACH agrees that minimum staffing levels as described below will be maintained at the Detention Facility at all times, regardless of staff vacation, training or illness. ACH represents and acknowledges that it may be required to increase staffing from these minimum stated levels in order to comply with this contract or applicable consent orders. However, ACH may request reasonable changes to the staffing plan. No changes to the staffing plan will be made without the written consent of the Sheriff. The Sheriff will not unreasonably withhold his consent so long as such changes, in the Sheriff's sole discretion, will maintain necessary and appropriate staffing to provide all required medical, psychiatric and dental care and satisfy any requirements contained in any applicable consent order. Requests for additional staffing due to changes in population, location, service requirements and/or to satisfy any applicable consent order will be negotiated between ACH, Sheriff and County prior to implementation of services. Additional staffing costs will be incremental to the current contract amount in effect at the time of service.

<u>WEEKLY STAFFING:</u>

(1) RN/LPN Facility Administrator can be an RN or LPN as long as approved by the Chief of Corrections – 40 hours per week

(1) Administrative Support – 40 hours per week

(1) RN - 7:00 a.m. – 3:00 p.m. seven days per week

(5) LPNs - 7:00 a.m. – 3:00 p.m. Monday through Friday

(4) LPNs - 7:00 a.m. – 3:00 p.m. Saturday through Sunday

(1) Qualified Mental Health Professional - 7:00 a.m. – 3:00 p.m. Monday through Friday

(5) LPNs - 3:00 p.m. – 11:00 p.m. seven days per week

(4) LPNs - 11:00 p.m. – 7:00 a.m. seven days per week

(2) Medical Records Clerks 40 hours per week each

<u>ON-SITE DOCTOR HOURS:</u>

Medical Director (medical doctor) daily for as long as necessary on a schedule agreed to by the Sheriff. The Medical Director or another covering physician with specific knowledge of the operation of the

ACH000273

Detention Facility is on call twenty-four hours a day, seven days a week, for emergency situations.

Psychiatrist one day per week (a week being defined as Sunday through Saturday), no less than four (4) hours per week.

Doctor specializing in obstetrics/gynecology every other week. Once a month, a certified registered nurse practitioner specializing in obstetrics/gynecology may visit the Detention Facility in lieu of the obstetrician/gynecologist.

Dentist one to two days per week totaling eight (8) hours per week.

ACH will provide services necessary to comply with all requirements contained herein.

R. **BASE COMPENSATION:** The County (at the request of the Sheriff) will pay to ACH the annualized base price of **Two Million, Nine Hundred Seventy-Three Thousand, Six Hundred Forty-Seven and 24/100 Dollars ($2,973,647.24)** during the term of this Agreement, payable in monthly installments. Monthly installments during the initial term will be in the amount of **Two Hundred Forty-Seven Thousand, Eight Hundred Three and 92/100 Dollars ($247,803.92)** each month. In the event this Agreement should commence or terminate on a date other than the first or last day of any calendar month, compensation to ACH will be pro-rated accordingly for the shortened month.

Account reconciliation shall be completed for each fiscal quarter of the Agreement. Adjustments shall be made for variances in the average daily inmate population, non-covered pharmaceuticals purchased and other expenses such as equipment or services purchased by ACH (with prior approval of the County and the Sheriff on behalf of the County). Any contract amount in arrears will be settled through reconciliation and adjusted accordingly. Adjustments will be made to the first monthly invoice prepared after reconciliation between ACH and the County. Payment of the adjusted amount will be due upon receipt of said invoice.

S. **INMATE POPULATION FLUCTUATION AND PER DIEM RATES:** The County, the Sheriff, and ACH agree that the annual base price is calculated based upon an average daily inmate population of up to **one thousand (1,000)** If the average daily inmate population exceeds **one thousand (1,000)** inmates over a period of one (1) month (each month), then the compensation payable to ACH by the County shall be increased by a per diem rate of **One and 00/100 Dollar ($1.00)** for each inmate over **one thousand (1,000)**. The average daily inmate resident population shall be calculated pursuant to the daily count sheet generated at approximately midnight each day. The excess over an average of **one thousand (1,000)**, if any, will be multiplied by the per diem rate and by the number of days in the period to arrive at the increase in compensation payable to ACH for that period. In all cases where adjustments become necessary, the invoice adjustment will be made on the invoice for a subsequent month's services. For example, if there is an average population for any given period of **one thousand thirty (1,030)** inmates, resulting in an excess of thirty (30) inmates, then ACH shall receive additional compensation of thirty (30) times the per diem rate times the number of days in that period. The

resulting amount will be an addition to the regular base fee and will be billed on a subsequent monthly invoice.

    T. **COST SHARING/COST POOL:** Out of the **Seven Hundred Forty-Three Thousand, Four Hundred Eleven and 81/100 Dollars ($743,411.81)** quarterly cost for healthcare services, a total amount of **Two Hundred Thousand Dollars ($200,000)** per quarter of this Agreement, is allocated to a "cost pool." ACH shall, at its own cost, arrange for healthcare services for any inmate who, in the opinion of the Medical Director (hereinafter meaning a licensed physician), requires such care. ACH's liability for costs associated with the healthcare services for inmates rendered <u>outside</u> the Jail and for prescription pharmaceuticals for inmates <u>either inside or outside</u> the Jail, will be limited each quarter of the term of this Agreement by this cost pool. If the costs of all care as described in this paragraph exceed the amount within any said quarter of **Two Hundred Thousand Dollars ($200,000)**, then ACH will review all costs and claims for payment to determine that such costs and claims are proper, pay for the additional costs and claims and submit invoices supporting the payments to the Sheriff along with an ACH invoice for one hundred percent (100%) of the cost in excess of **Two Hundred Thousand Dollars ($200,000)** for said quarter. Subject to the provisions contained herein, ACH shall be responsible for all costs associated with inmate healthcare for all incurred but not received costs during the term of this Agreement. ACH's responsibility to determine those costs and claims that are properly payable and for payment of such property payable costs and claims shall survive any termination of this Agreement and shall extend for such period until all such costs and claims have been resolved.

    U. **CONTRACT TERMINATION:** This contract may be cancelled "without cause" by any party upon ninety (90) days' written notice. It is understood and agreed that this Agreement shall be subject to annual appropriations by Madison County for the operation of the Detention Facility. Notwithstanding any provisions herein to the contrary, if funds are not appropriated for this Agreement, then upon exhaustion of such funding, Madison County and the Sheriff shall be entitled to immediately terminate this Agreement without penalty or liability. Recognizing that such termination may entail costs for ACH, Madison County and the Sheriff will act in good faith and make every effort to give ACH notice of any potential funding or appropriation issues. If this Agreement is terminated due to lack of funding, ACH shall be paid for services rendered up to the time of termination. This contract may be terminated "for cause" upon ten (10) days' written notice. In the event that this Agreement is terminated for cause, ACH shall be compensated for work completed by ACH up to the termination date set forth in the written termination notice.

    7. **OBJECTIVES:** ACH will meet, exceed and otherwise comply with the following stated objectives:

    A. To deliver unimpeded, necessary healthcare services (including medical, dental and mental health services) to inmates (as set forth herein and as dictated by law) that can be audited against established standards.

    B. To operate the healthcare program in a humane manner with respect to the inmate's right to basic healthcare services.

ACH000275

    **C.** To operate the healthcare program at full staffing and use only licensed, certified and professionally trained personnel.

    **D.** To implement a written healthcare plan with clear objectives, policies, and procedures.

    **E.** To maintain an open and cooperative relationship with the Sheriff's administration and staff.

    **F.** To maintain complete and accurate records of care and to collect, analyze and report health statistics on a regular basis.

    **G.** To operate the healthcare program in a cost-effective manner with full reporting and accountability to the Sheriff and Madison County.

**8. MISCELLANEOUS:**

    **A. INDEPENDENT CONTRACTOR STATUS:** The parties acknowledge that ACH is an independent contractor engaged to provide medical care to inmates at the Jail Facilities under the direction of ACH management. Nothing in this Agreement is intended nor shall be construed to create an agency relationship, an employer/employee relationship, or a joint venture relationship between the parties. The employees or agents of ACH are not now nor shall they be deemed to be employees of Madison County or the Sheriff. Likewise, the employees of the Sheriff and/or Madison County are not now nor shall they be deemed to be employees of ACH. ACH assumes all financial responsibility for the employees of ACH, such as wages, withholding taxes, social security taxes and other taxes which may be related to the services to be provided under this Agreement.

    **B. ASSIGNMENT AND SUBCONTRACTING:** ACH shall not assign this Agreement to any other person or entity without the express written consent of the Sheriff and the County. Any such assignment or subcontract shall include the obligations contained in this Agreement. Any assignment or subcontract shall not relieve ACH of its independent obligation to provide the services and be bound by the requirements of this Agreement. In order to discharge the obligations hereunder, ACH may engage certain healthcare professionals as independent contractors rather than employees. As the relationship between ACH and these healthcare professionals will be that of independent contractor, ACH will not be considered or deemed to be engaged in the practice of medicine or other professions practiced by these professionals. ACH will exercise control over the manner or means by which these independent contractors perform their medical duties. This control will be exercised reasonably consistent with independent medical judgment these independent contractors are required to exercise. ACH shall exercise administrative supervision over such professionals necessary to insure strict fulfillment of the obligations contained in this Agreement. All terms and conditions of this Agreement shall be included in all such subcontracts. For each agent and subcontractor, including all medical professionals, physicians and nurses performing duties as agents or independent contractors of ACH under this Agreement, ACH shall provide the Sheriff proof that, for each such professional, there is in effect during the period that person is engaged in the performance of this Agreement, a professional liability or medical malpractice insurance policy

ACH000276

in an amount or amounts of One Million Dollars ($1,000,000) coverage per occurrence and Three Million Dollars ($3,000,000) annual aggregate coverage.

    **C.** **NOTICE:** Unless otherwise provided herein, all notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally in hand or sent by certified mail, return receipt requested, postage prepaid, and addressed to the appropriate party(s) at the following address or to any other person at any other address as may be designated in writing by the parties. All notices to the Madison County Sheriff and to Madison County shall be addressed to:

    County:  Madison County Commission
          100 North Side Square
          Huntsville, Alabama 35801-4820

    Sheriff:  Sheriff Blake Dorning
          Madison County Sheriff's Department
          100 North Side Square
          Huntsville, Alabama 35801-4820

All notices to ACH shall be addressed to:

    Norman R. Johnson, M.D.
    Advanced Correctional Healthcare, Inc.
    3922 West Baring Trace
    Peoria, Illinois 61615-2500

Notices shall be effective upon receipt.

    **D.** **GOVERNING LAW:** This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed according to, the laws of the State of Alabama, except as specifically noted.

    **E.** **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof. No modifications or amendment to this Agreement shall be binding upon the parties unless the same is in writing and signed by the respective parties hereto. All prior negotiations, agreements and understandings with respect to the subject matter of this Agreement are superseded hereby.

    **F.** **AMENDMENT:** This Agreement may be amended or revised only in writing and signed by all parties.

    **G.** **WAIVER OF BREACH:** The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

ACH000277

  **H. OTHER CONTRACTS AND THIRD-PARTY BENEFICIARIES:** The parties acknowledge that ACH is neither bound by nor aware of any other existing contracts to which the County or the Sheriff are parties and which relate to the providing of medical care to inmates at the Jail. The parties agree that they have not entered into this Agreement for the benefit of any third person or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof, specifically including but not limited to arrestees or inmates in the custody of the Sheriff.

  **I. SEVERABILITY:** In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of the Agreement which shall remain in full force and effect and enforceable in accordance with its terms.

  **J. LIAISON:** The Madison County Sheriff shall serve as the liaison with ACH.

  **K. COOPERATION:** On and after the date of this agreement, each party shall, at the request of the other, make, execute and deliver or obtain and deliver all instruments and documents and shall do or cause to be done all such other things which either party may reasonably require to effectuate the provisions and intentions of this agreement.

  **L. TIME OF ESSENCE:** Time is and shall be of the essence of this agreement.

  **M. AUTHORITY:** The parties signing this agreement hereby state that they have the authority to bind the entity on whose behalf they are signing. The Sheriff's signature hereto is not intended to bind him in his individual capacity, and his signature hereto is merely intended to convey his consent to and desire for the County to enter into this Agreement with ACH to provide the services herein.

  **N. BINDING EFFECT:** This agreement shall be binding upon the parties hereto, their heirs, administrators, executors, successors and assigns.

  **9. CUMULATIVE POWERS:** Except as expressly limited by the terms of this agreement, all rights, power and privileges conferred hereunder shall be cumulative and not restrictive of those provided at law or in equity.

IN WITNESS WHEREOF, the parties have executed this Agreement in their official capacities with legal authority to do so.

SHERIFF, MADISON COUNTY

_/s/ Blake Dorning_
Blake Dorning
Date: June 4, 2012

MADISON COUNTY COMMISSION

_/s/ Mike Gillespie_
Mike Gillespie, Chairman
Date: June 4, 2012

ATTEST:

_/s/ Howard Baites_
Howard Baites
County Administrator
Date: June 4, 2012

ADVANCED CORRECTIONAL HEALTHCARE, INC.

By: _/s/ Neil Leuthold_  Neil Leuthold
Its: President / Comptroller
Date: June 26, 2012



# Madison County Commission

JEFF RICH
*County Attorney*

May 21, 2013

**VIA ELECTRONIC MAIL - drj@advancedch.com**

Norman R. Johnson, M.D.
Advanced Correctional Healthcare, Inc.
3922 West Baring Trace
Peoria, Illinois 61615-2500

Re: Healthcare Services Agreement at the Madison County Detention Facility

Dear Dr. Johnson:

Please find attached a copy of the Healthcare Services Agreement, as approved by the Madison County Commission at its meeting on May 17, 2013. Please do not hesitate to contact me if you have any questions.

Sincerely,

J. Jeffery Rich
County Attorney

JJR/cbe
Attachment
c: Steve Morrison (via Electronic Mail, w/Attachment)

100 Northside Square Suite 700 • Huntsville, Alabama 35801-4820 • Phone: 256-519-2061 • Fax: 256-519-2059



DEFENDANT'S EXHIBIT 55 Rich

ACH000237